# Richmond

## HADEN v. FALLS AND OTHERS.

### January 15, 1914.

1. SPECIFIC PERFORMANCE—*Contingent Right of Dower—Refusal to Convey—Objection on Other Grounds.*—In the absence of any allegation of fraud, a court of equity will not, at the instance of the vendee, decree the specific performance of a husband's contract to sell his land, in which his wife has a contingent right of dower, which she refuses to release, where the purchaser demands an abatement of the purchase price or an indemnity by reason of such refusal; and, where specific performance is resisted on other grounds, it is immaterial that this objection is not made in the answer. The same weight will be given to it as if it had been distinctly and formally presented. The wife is not to be wrought upon by her love for her husband and sympathy in his situation to do that which her judgment disapproves as contrary to her interest, nor is he to be tempted to use undue means to procure her consent.

Appeal from a decree of the Circuit Court of Campbell county. Decree for the defendants. Complainant appeals.

*Affirmed.*

This suit was brought by M. D. Haden, the appellant, against W. T. Falls and others to compel the specific performance of an agreement to sell or exchange certain real and personal property. The agreement is in the form of an offer made on the 6th day of February, 1912, and accepted on the next day, and is in the following language:

"2/6/12.

"M. D. Haden, Esq.,
      "Lynchburg, Va.—
"Dear Sir:
"Concerning the negotiations which I have heretofore taken up with you, I wish to make you the following offer:

"I hereby offer to sell you my 42½ acres or less of land (this being in gross and not by the acre) near Concord, lying partly in Campbell and partly in Appomattox county, Virginia, which I bought from Walter G. Jones and wife on, to-wit, August 10, 1911. This land has on it a deed of trust of $2,000 in which F. W. Whittaker is trustee.

"Also, I hereby offer to sell you the following personal property: One 30 H. P. Frick Engine and Boiler complete with all fixtures, situate on the property of Mr. Dameron in West Lynchburg, on Forest road, Campbell county, Virginia; one Lane mill complete, at same place; four kant hooks; two crab hooks; one road chain; one log chain; one Henry Ditson 50″ saw, one 10″ cross-cut saw; all tools and wrenches that belong to the mill.

"The above personal property has a lien on it held by the Virginia Interstate Land Agency for about $440.00, which is the only lien against the personal property, and in the event my offer is accepted, that lien will be released, and, if there are any other liens, they also will be released.

"In addition to the foregoing offer to sell you the real estate and personal property above, and as a part of this agreement or offer, I agree to pay the costs of the suit of yourself against the Virginia Interstate Land Agency and others for a receivership, and also the attorney's fee incurred by you in said litigation (amounting in all to $108.29), and you, upon my complying with the foregoing offer, are to do the following things:

"You are to assume $2,000.00 of the debt now secured by deed of trust on the real estate above mentioned, I to pay the interest to date of the deed to you and the apportionate taxes as of that date, and assign and transfer to you without compensation all my interest in the insurance on the buildings on said real estate.

"The deed which I am to make you for said real estate shall set forth that you do assume $2,000.00 of the debt

secured on said real estate and you are to sign said deed with a clause therein to the effect that you do make such assumption. This debt I certify is the only debt against the property, or, if another, then such other shall be forthwith released.

"You are also to sell to me and give me a bill of sale for the following personal property where the same now is, free of all liens:

"Namely, one H. P. boiler and engine; one High Point sawmill; one cut-off saw frame, etc., and 25 shares of stock in the Virginia Interstate Land Agency, Inc.

"The above mentioned tangible personal property which you are to sell me is all in Campbell county, near Concord, Va.; the boiler and engine being on the C. B. Cross & Bro.'s property, and the other personal property is on the farm of M. D. Haden.

"I make you this offer for the sale or exchange of my real estate and personal property above mentioned for the personal property of yours hereinbefore mentioned on the terms above set out, and in consideration of $1,000 to me in hand paid, receipt of which is hereby acknowledged. I agree that this offer shall be subject to your acceptance or rejection at any time within three days.

"If the said M. D. Haden shall accept the foregoing offer I hereby agree that all the undertakings on my part hereinbefore made will be fully performed within three days from the date hereof.

"Witness my hand and seal.

                              "W. T. FALLS,
                                   "[Seal]"

"I hereby accept the foregoing offer the 7th day of February, 1912.

                              "M. D. HADEN,
                                   "[Seal]"

On the day the offer was made two papers were prepared, of which the following are copies:

"Whereas by a writing of this date Walter K. Falls has made a certain offer to M. D. Haden involving the sale of 42½ acres of land, more or less, to the said Haden, and certain personal property and the transfer by said Haden to the said Falls of twenty-five shares of stock in the Virginia Interstate Land Agency, Incorporated, a copy of which writing is hereto attached. This writing further witnesseth: That if the aforesaid offer made by the said Falls to the said Haden shall be accepted by the said Haden and shall be fully performed by the said Falls, then for value received the undersigned Virginia Interstate Land Agency doth hereby release and relinquish as compromised and satisfied all claims or demands of any kind, whether at law or in equity, and which it has asserted, or which it could or might hereafter assert, either by action at law or suit in equity against him, and the said M. D. Haden on his part, if said agreement shall be accepted by him and faithfully performed by the said Falls, hereby releases all demands of any kind against the Virginia Interstate Land Agency, either at law or in equity, or which he has already asserted, or would or might hereafter assert, by action at law or suit in equity.

"Witness the following signatures and seals, this, the 6th day of February, 1912.

"VIRGINIA INTERSTATE LAND AGENCY,<br>"By its President."

"This agreement, between Mrs. Evie M. Haden, wife of M. D. Haden, party of the first part, and the Virginia Interstate Land Agency, Incorporated, party of the second part:

"Witnesseth, that whereas certain offers have been made by W. T. Falls to M. D. Haden involving the purchase of the said Haden's stock in the above named corporation,

and requiring the performance of certain things by the said Falls, in the event M. D. Haden should accept the latter's offer;

"And, whereas, the said Mrs. Evie M. Haden is the holder of a note or bond for $1,000.00 of the aforesaid corporation, secured by deed of trust on a lot with a concrete house thereon, in Westover Heights, West Lynchburg, Campbell county, Virginia, which note, with one year's interest thereon, will become due and payable February 14, 1912;

"Now, therefore, it is hereby agreed between the parties hereto that if the said M. D. Haden shall accept the offer of the said W. T. Falls, and if the said Falls shall faithfully and fully perform his part of the undertakings in his said written offer to the said M. D. Haden, in the event said offer is accepted, and if the said Virginia Interstate Land Agency shall faithfully discharge and release the said M. D. Haden from all and every manner of liability, claim or demand which it, the said company, has, or thinks it may have, against the said M. D. Haden, then the said Evie M. Haden hereby covenants and agrees that if the interest, amounting to $60.00, on said $1,000.00 note or bond shall be promptly paid to her on or before February 14, 1912, she will then extend the time for the payment of said $1,000.00 note to March 1, 1912. Witness the following signatures and seals this February 6, 1912.

"VIRGINIA INTERSTATE LAND AGENCY,<br>"By ————, Its President.<br>"EVIE M. HADEN,<br>"By S. V. Kemp, Her Attorney."

In a few days after the acceptance of the said offer of sale, of which the vendor was promptly notified, perhaps on the 12th of that month, he signed and acknowledged a deed in which he and his wife were named as grantors and

the appellant as grantee, conveying the real estate mentioned in the said offer of sale, but the deed was never signed by the wife. On the 21st of the month Falls and his wife conveyed the said land to the Virginia Interstate Land Agency. On the 28th of the same month that corporation conveyed the most valuable portion of the land to W. T. Cross and wife.

In March following this suit was instituted against the vendor, Falls, the Virginia Interstate Land Agency, Cross and wife and Whitaker, trustee, in a deed of trust dated February 28, 1912, executed by Cross and wife, for the purpose of having the said conveyance set aside as void on the ground that the grantees, respectively, in said conveyances were purchasers with notice of the appellant's prior agreement to purchase the said land and to specifically execute the said agreement between Haden and Falls. The circuit court refused the relief sought, and dismissed the bill. From that decree this appeal was allowed.

It is insisted here by the appellees, as it was in the circuit court, that the appellant was not entitled to the relief sought because the offer to sell by Falls and its acceptance by the appellant did not constitute the entire contract between them, but that they and the other two papers mentioned above were parts of one transaction, and that it was understood that there could be no trade unless all of the said papers were duly executed, including a release by the Virginia Interstate Land Agency of the liens held by it against the land then owned by Falls and in the bill described; and, as the other papers were not duly executed, Falls was under no obligation to and could not specifically perform his offer to sell.

(2) Because, even if the agreement sued on constituted the entire contract between Falls and the appellant, the latter did not keep and perform it on his part;

(3) Because of Falls' inability to keep and perform the contract on his part;

(4) Because the agreement between Falls and the appellant had been abandoned before the Virginia Interstate Land Agency purchased the land;

(5) Because Cross and wife were purchasers for value without notice of the agreement sought to be enforced.

*A. S. Hester,* for the appellant.

*H. C. Featherston* and *George E. Caskie,* for the appellees.

BUCHANAN, J. (after making the foregoing statement), delivered the opinion of the court.

In considering the case a serious question arises, not raised in the answers, nor discussed at the bar, and that is whether the coverture of Mrs. Falls does not stand in the way of any decree for the specific performance of the agreement against her husband.

The bill does not make the wife a party, but after alleging that her dower interest in the land is of little, if any, practical value, since there exist upon the land two deeds of trust, in which she united with her husband, securing sums aggregating more than the full value of the land, the bill asks, among other things, that the contract between the appellant and Falls and the deed signed by him to the appellant be declared of binding force and effect, "and that specific performance of the contract and said deed and each of them be decreed; and if the same cannot be fully enforced by reason of the wife of said W. T. Falls not having joined or united therein, then that the said contract and deed be enforced with the further provision made for the protection of this complainant against any outstanding dower interest, if such there be, in the wife of said Falls; that the consideration agreed to be paid or delivered

by your complainant to the said W. T. Falls be under the orders and proceedings of this court, or through some receiver or commissioner appointed by it, sold and the proceeds retained so far as need be for your complainant's protection against said outstanding dower interest, if any, and to the payment of said Falls' obligations in said contract aforesaid to your complaintant; that a personal decree be entered against the said W. T. Falls for any and all liabilities owing by him to your complainant and growing out of the said contract, and that all necessary and proper accounts be ordered and taken," and for general relief.

It is well settled in this State and generally that a wife cannot be compelled to unite with her husband in conveying land under his contract to sell. 1 Minor on Real Property, sec. 318, and cases cited in note 5, and cases cited in note to *Aiple-Hemmelmann* v. *Spelbrink,* 14 Ann. Cas. 652, 671. But the courts are not agreed whether or not such a contract will be specifically enforced when, because of the refusal of the wife to unite in the conveyance, the purchaser demands an abatement of the purchase price or an indemnity by reason of such refusal.

In many jurisdictions, including our own, it seems to be settled that in such a case specific performance will not be decreed. See note to *Aiple-Hemmelmann* v. *Spelbrink,* *supra,* p. 671, where many cases are collected.

In *McCann* v. *James,* 1 Rob. (40 Va.) 256, no opinion was delivered, but the case made and the question decided is thus stated in the head-note by Mr. Robinson: "A husband sells land in which his wife has an estate in fee, and executes a bond to the purchaser, conditioned that he and his wife will make a deed to the purchaser within a specified time. After that time the husband states that his wife has declinded joining him in the deed, and has forbidden him to convey his estate, and he refuses to make any conveyance. Thereupon a bill is filed by the purchaser against

the husband, stating that there are children of the marriage, claiming that the husband is therefore entitled to a life estate and praying that he may be decreed to convey to the complainant all his interest in the land, reserving to complainant his right of action at law upon the bond against the husband for failing to procure his wife to unite with him in the conveyance. The bill being demurred to, the circuit court sustains the demurrer and dismisses the bill, and this decree is affirmed."

In the case of *Clark, &c.,* v. *Reins,* 12 Gratt. (53 Va.) 98, it was held that a court of equity will not decree a specific performance of a contract by a husband and wife for the sale of the wife's land at the suit of the vendee, the wife refusing to execute the contract, nor will the court compel the husband to convey his life estate to the vendee with compensation for the failure of the wife to convey her interest in the land. In that case, Judge Daniel, who delivered the opinion of the court, after discussing the cases of *McCann* v. *Jones, supra,* and *Evans and Wife* v. *Kingsbury,* 2 Rand. (23 Va) 126, 14 Am. Dec. 779, and *Watts* v. *Kenny and Wife,* 3 Leigh (30 Va) 272, 23 Am. Dec. 266, said: "The opinion," referring to Judge Tucker's opinion in the last named case, "was approved by the whole court, as was also that of Judge Green in *Evans and Wife* v. *Kingsbury.* Whilst, therefore, I do not find any precedent in our reports of a direct refusal by this court to decree at the suit of the vendee the specific performance of a sale by the husband of the wife's land, yet in the absence of any case or opinion here questioning the propriety of the two last cited decisions, I feel no hesitation in recognizing them as true expositions and ruling adjudications of the law of this case."

The cases of *Evans and wife* v. *Kingsbury* and of *Watts* v. *Kinney and Wife* were each suits by the husband and wife against the vendee for a specific execution of the con-

tract of the husband against his vendee.   In these cases the
court found it necessary to consider and decide what ought
to have been the holding if the suits had been brought by
the vendee, and in each of them the court held that such
a decree could not have been properly rendered in favor of
the vendee, and refused to decree specific performance in
favor of the vendors on the ground of want of mutuality.

In *Graybill, &c.,* v. *Brugh,* 89 Va. 895, 17 S. E. 558, 17 L.
R. A. 133, 37 Am. St. Rep. 894, it was held that "specific
execution of an agreement," quoting with approval the
language of Warville on Vendors and citing *Clark* v. *Reins,*
"to sell and convey will not ordinarily be decreed against
a vendor,, a married man, whose wife refuses to join in the
deed, where there is no proof of fraud on his part in her
refusal, unless the purchaser is willing to pay the full pur-
chase money and accept the deed without her joining."
See Minor on Real Property, sec. 318.

The rule announced in the last named case and the rea-
son therefor, whether the interest of the wife be her con-
tingent right of dower or a greater interest, is clearly
stated by Judge Sharswood in *Riesz's Appeal,* 73 Pa. St.
490, 491.   After referring to several cases in that juris-
diction on the question, he says:   "These cases settle, if
any amount of authority can settle anything, that in
Pennsylvania specific performance of an agreement to sell
real estate will not be decreed against a vendor who is a
married man and whose wife refuses to join in the convey-
ance, so as to bar her dower, unless, indeed, the vendee is
willing to pay the full purchase money and accept the
deed of the vendor without his wife joining.   The policy of
these decisions is very manifest.   The wife is not to be
wrought upon by her love for her husband and sympathy
in his situation to do that which her judgment disapproves
as contrary to her interest, nor is he to be tempted to use
undue means to procure her consent.   The vendor must be

left in such cases to his action at law to recover damages . . . The case does not fall within the principle of those decisions where the vendor, who cannot make title to all he has contracted to convey, is held to be not thereby relieved from specific performance as far as it is in his power, but shall be compelled to execute his contract with a reasonable abatement in the price. The right of dower of the widow is of such a contingent nature, depending, as it does, as well upon her surviving her husband as on her continuance in life after his death, that no abatement in the price can be made which will be just to both parties, without in effect making a new contract for them—a contract which perhaps, in the first instance, neither party would have come into, certainly not the vendor. Receipt of the purchase money in full may have been the main object of the sale to enable him to pay debts or to carry on other plans. If he is to be subjected to serious pecuniary loss by his wife's refusal to join, it will operate almost as powerfully as the peril of imprisonment as a moral coercion and compulsion upon her to yeild her consent, instead of that free will and accord which the law jealously requires her to declare by an acknowledgment upon an examination before a magistrate separate from her husband."

"The policy of the law," as was said by Lord Eldon in *Emory* v. *Ware,* 8 Vesey, Jr. (Eng.) 515, "is that a wife is not to part with her property but by her own spontaneous and free will. If this was perfectly *res integra,* I should hesitate long before I would say the husband is to be understood to have gained her consent, and that the presumption is to be made that he obtained it before the bargain, to avoid all fraud that might afterward have been practiced to procure it. I would have hesitated long in following up that presumption rather than the principle of the policy of the law, for if a man chooses to contract for the estate of a married woman or an estate subject to dow-

er, he knows the property is hers altogether or to a given extent. The purchaser is bound to regard the policy of the law, and what right has he to complain if she, who, according to law, can part with her property but by her own free will expressed at the time of the act of record, takes advantage of the *locus penitentiae;* and why is he not to take his chance to damage against the husband?" See also *Peeler* v. *Levy,* 26 N. J. Eq. 330, 335; Pom. Spec. Perf. Contr., sec. 461; *Cowan* v. *Kane,* 211, 111, 575, 71 N. E. 1097, 41 Ohio St. 641; *Fortune* v. *Watkins,* 94 N. C. 315; *Aiple-Hemmelmann* v. *Spelbrink, supra.*

There is neither allegation nor proof that Mrs. Falls' refusal to unite in the conveyance signed by her husband was procured by his fraud. It is true in this case, as in the case of *Clark* v. *Reins, supra,* that no objection was made in the answers of any of the defendants to the specific execution of the husband's contract on the score of the coverture of the wife of the vendor, nor was that objection urged in argument here; but as the denial of a court of equity to specifically execute a husband's contract for the sale of land in which his wife has an interest, where she refuses to join in the conveyance, unless the purchaser is willing to pay the full purchase price, claiming neither an abatement thereof nor indemnity on that account, is based upon principles of public policy, the fact that the objection was not made in the answers would not seem to be material.

In *Clark* v. *Reins, supra,* p. 110, in discussing this question it was said: "It is true no objection to a specific performance was made by the defendants in their answers on the score of Mrs. Branch's coverture, and it is urged on behalf of the appellee that this court ought not to proceed on the supposition that she may not be willing to unite in the conveyance. The same feature existed in the case of *Emery* v. *Wane,* yet it was not regarded by the master of the rolls when the case was before him (5 Vesey Rep. 847)

or by Lord Eldon on the appeal (8 Vesey R. 505) as a circumstance of any moment. In that case, as in this, the defendants all united in one answer, in which they resisted the decree on grounds wholly independent of the coverture of some of the female defendants, yet the court gave the same weight to the objection as if it had been distinctly and formally presented. The appellants all strenuously resisted the decree in the circuit court and are still seeking to reverse it here, and little, if any, chance of benefit to the appellee could be anticipated from sending the case back in order, by privy examination (indeed, if such a practice in any case could be allowed here), to ascertain whether Mrs. Branch will choose to unite in a deed, as there can be little or no doubt as to what her response would be."

Mrs. Falls testified in this case, and while she stated that she would have been willing to have united with her husband in a conveyance made in accordance with the terms and conditions of the agreement between her husband and the appellant as construed and understood by her husband and herself, it is clear from her evidence that she is unwilling to unite with him in a conveyance upon the terms of the agreement as construed and understood by the appellant and as he seeks to enforce it. This being so, and the bill of the appellant showing that he is not willing to pay the full purchase price and accept a deed from his vendor alone, but is asking that a portion thereof be retained by the court for his protection against the outstanding dower of the vendor's wife, the appellant is not entitled to a decree for specific performance, and the trial court did not err in dismissing his bill.

*Affirmed.*