## Staunton.

## AETNA INSURANCE COMPANY V. ASTON.

### September 19, 1918.

1. APPEAL AND ERROR—*Conflicting Evidence.*—The verdict of a jury upon questions of fact, upon conflicting evidence, is conclusive as to such questions.

2. FIRE INSURANCE—*False Statements—Questions of Law and Fact.*—In an action upon a fire insurance policy whether plaintiff made false statements in making his proof of loss is a question for the jury under all the facts and circumstances of the case.

3. FIRE INSURANCE—*Assignment of Policy—Forfeiture.*—Under a policy of insurance, which provides that the policy·shall be void if it is assigned before loss, an actual assignment of the policy without the consent of the company will work a forfeiture, but a mere agreement to assign·it will not.

4. FIRE INSURANCE—*Policy as Chose in Action—Assignment.*—After the risk has terminated by fire, the interest of the assured becomes a *chose in action*, which he has a right to assign, in spite of the usual clause against assignment, without asking permission of the company.

5. FIRE INSURANCE—*Right of Possession.*—If at the time of the fire there had been no change in the title and ownership of the property, it necessarily follows that there had been no change in the *right* of possession, as distinguished from mere occupancy.

6. SPECIFIC PERFORMANCE—*Husband and Wife—Contract not Enforceable.*—Upon principles of public policy, a party to a contract of exchange of lands could not enforce the contract of exchange, where the wife of the other party had never signed the contract, although she was part owner of the land and had her dower interest in the remainder of the land.

7. SPECIFIC PERFORMANCE—*Conditional Contract.*—A contract of exchange of lands cannot be enforced at the instance of either party, when it is conditional and dependent upon the will of third persons, namely, the lien creditors of both parties.

8. FIRE INSURANCE—*Change of Ownership or Possession—Case at Bar.*—A. agreed with K. and his wife to exchange A.'s mill

property and other property for K.'s farm and a lot. The contract for the exchange purported to be with K.'s wife also, but she did not sign it, although she owned, with her husband, a one-half undivided interest in the farm, and had her inchoate dower interest in all of the land owned by her husband. There was a verbal agreement that A. would assign his insurance to K., and that K. would assign his insurance to A. K. took possession of the mill. The trade was not closed by deeds because there were deed of trust liens on both properties, but deeds were made and deposited, in escrow, with a bank. This status remained until fire destroyed the mill. By a supplemental contract dated after the fire, it was recited that all of the conditions of the original contract had been complied with, and in consideration thereof, A. bound himself to pay over to K. the insurance collected on account of the fire loss.

*Held:* That there had been no change in the title, ownership, or in the legal right of possession of the property within the clause of the policy providing for its forfeiture upon such change without the consent of the company.

9. FIRE INSURANCE—*Change of Possession.*—The change of possession contemplated by the policy is a change in the lawful right of possession as distinguished from mere occupancy.

10. FIRE INSURANCE—*Possession.*—Possession under the alienation clause means, in general, the right of possession, rather than the physical occupancy of the property.

11. FIRE INSURANCE—*Increase of Hazard—Change of Possession—Questions of Law and Fact.*—Where a policy permits a change of occupants without an increase of hazard, it is for the jury to determine whether or not the change increased the risk.

12. FIRE INSURANCE—*Presumptions and Burden of Proof—Questions of Law and Fact.*—Whether the company, in defending an action on a policy, relies upon the falsity of a particular representation, or on the failure to comply with an executory stipulation, it is upon them to prove it; and it is a question of fact in either aspect.

13. FIRE INSURANCE—*Chance of Possession—To Whose Benefit Judgment Inures.*—A mere contract to sell property covered by insurance, even though the insured has bound himself to convey upon the performance of conditions, does not affect the validity of the policy, and, if a loss occurs before the conditions are performed, a recovery may be had by the insured even though the conditions are subsequently performed, and, if it was agreed that the policy should be assigned to the purchaser, the judgment will inure to his benefit.

14. FIRE INSURANCE—*Change of Possession—By Whom Action Brought—Case at Bar.*—Under section 2860, Code of 1904,

K., in the instant case, could have sued in his own name, but not having done so, a recovery for his benefit is not thereby barred. It appearing from the record that the suit is in fact for the benefit of K., the judgment may be so marked and rendered even after verdict. The endorsement of the fact is sometimes not made until after the execution is issued.

Error to a judgment of the Corporation Court of city of Bristol, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*John W. Price* and *Caskie & Caskie,* for the plaintiff in error.

*White, Penn & Penn,* and *John J. Stuart,* for the defendant in error.

WHITTLE, P., delivered the opinion of the court.

This was a motion for judgment upon a fire insurance policy and resulted in a verdict for defendant in error, Aston, plaintiff below, for $5,000, the full amount of the policy. The case was submitted to the jury without instructions, and is before us upon a writ of error to the action of the trial court in overruling the motion of the insurance company to set aside the verdict as contrary to the law and evidence, and rendering judgment thereon for the plaintiff.

For the most part the issues raised in the grounds of defense and the motion to set aside the verdict, and reiterated in the petition for a writ of error, involved questions of fact, and having been resolved adversely to the insurance company upon conflicting evidence, are concluded by the verdict of the jury.

42

It is not denied that at the time the insurance was taken out Aston was the fee simple owner of the property insured, and there had been no change of title between that time and the date of the fire; because both the agreement to sell and the deeds of conveyance made in pursuance thereof had previously been delivered in escrow and were so held when the fire occurred. The same is true of the right of possession, which rested upon exactly the same title papers. Therefore, the occupancy of the mill property by Kendrick at the time of the fire did not rise to the dignity of a *right of possession*, but was dependent upon matter of *grace* and not of *contract.*

These questions, and others involved in the case, have been so satisfactorily discussed and disposed of in the opinion of the learned judge of the Corporation Court of the city of Bristol, both upon the law and the evidence that we are content to adopt his opinion as the opinion of this court. It reads as follows:

"The contract of insurance is the standard policy covering plaintiff's flouring mill building, machinery and equipment, which was totally destroyed by fire on October 11, 1912. The policy contains the identical clauses as to unconditional and sole ownership and as to change in interest, title or possession of the property which are quoted and construed in *Rochester German Ins. Co.* v. *Monumental Savings Ass'n,* 107 Va. 701 [60 S. E. 93]. The policy also contains all the other usual conditional and restrictive clauses, violation of which avoids the policy.

"After the insurance was written but before the fire, by contract in writing, dated August 3, 1912, W. H. Aston, the plaintiff, agreed with Ellis M. Kendrick 'and his wife Cora E. Kendrick' to exchange Aston's mill property and a house and lot both located at Meadow View, Washington county, Virginia, for Kendrick's Rector and Rickett's farm of about 132 acres and his lot recently bought at public sale, both

of which are also located at the same place. The contract for the exchange of properties purports to be with Mrs. Kendrick also, but she did not sign it, and the evidence shows that she owned, with her husband, a one-half undivided interest of seventy acres of the farm, and, of course, had her inchoate dower interest in all of the land owned by her husband. The mill property cost $15,500. As a basis for the exchange, Mr. Aston valued at $12,000 the lot without the building, and machinery, being worth $1,200 or $1,500. There was other evidence that the mill property was worth $15,000. There was additional insurance on the mill property, making an aggregate of $10,000, which was payable to Straley and Hurt, trustees, as their interest may appear.

"There was a verbal agreement as a part of the trade, that Aston would assign his insurance to Kendrick, and that Kendrick would assign his insurance to Aston.

"Kendrick took possession of the mill, made some repairs, and proceeded to operate same from and after the date of the contract, August 3, 1912. Aston took possession of the farm the same date, except as otherwise provided in the contract, Kendrick remaining in possession of a part.

"The trade was not closed by deeds because there were deed of trust liens on both properties, and Kendrick had not yet paid for in full nor received a deed for his lot purchased at public sale. But deeds were made and deposited, in escrow, with the First National Bank at Abingdon, with directions as follows:

" 'These papers to be delivered to W. H. Aston and E. M. Kendrick when they jointly call for them.'

"The contract provided that the deeds for the farm and mill property 'shall be made as soon as possible.' This status of their affairs so remained until the fire destroyed the mill and machinery on October 11, 1912. Mr. Aston testified that he had not removed the $10,000 lien on the mill

property before the fire, but had contracted for the removal of same in this way: that Mr. Hurt had agreed for him to substitute the Kendrick farm as security in lieu of the mill property.

"By supplemental contract in writing dated October 31, 1912, it was recited that all of the conditions of the original contract had then been complied with and the original contract carried out as originally intended, and in consideration whereof, Aston bound himself to pay over to Kendrick 'any insurance which he may be able to collect on account of said fire loss and to do anything necessary and proper to be done by him to further the collection of such fire loss for the benefit of' Kendrick.

"Aston also testified that he expected no part of the recovery, but that he would, of course, have been interested in same if the trade had not been perfected.

"The defendant filed the grounds of its motion in writing, the most, if not all of which, involve questions of fact concluded by the verdict.

"The defendant contends, as grounds for the motion, that the property was excessively insured and that the same was wilfully burned by Kendrick. But both of these contentions involve a conflict of evidence, and are concluded against the company by the verdict of the jury. *National Union Fire Insurance Co.* v. *Burkholder,* 116 Va. 942 [83 S. E. 404].

"As to whether plaintiff made false statements in making his proof of loss was also 'a question for the jury under all the facts and circumstances of the case.' *North British & Mer. Ins. Co.* v. *Nidiffer,* 112 Va. 591, 596 [72 S. E. 130, 132, Ann. Cas. 1916 A, 464]."

As one ground of its motion, defendant copies one of its grounds of defense as follows:

" 'If the plaintiff should attempt to prove that any assignment of the policy was made, or attempted to be made before loss, the defendant will rely upon that clause of the

policy which provides that it shall be void if it is assigned before loss.'

"This ground is without merit. While an actual assignment of the policy without the consent of the company will work a forfeiture, a mere agreement to assign same will not. 'An agreement to assign the policy is not a breach of the condition.' Cooley's Briefs on the Law of Ins., Vol. II, p. 1864, citing *inter alia, Fire & Marine Ins. Co.* v. *Morrison,* 11 Leigh (38 Va.) 354, 36 Am. Dec. 385.

" 'After the risk has terminated by fire, the interest of the assured becomes a *chose in action,* which he has a right to assign, in spite of this clause, without asking permission of the company.' Richards on Ins. (2d ed.), sec. 148, p. 162. Cooley's Briefs on Law of Ins., Vol. II, pp. 1862-3.

"The ground chiefly relied upon in support of the motion is stated thus: 'After the issuance of the policy there was a change in the title, interest and possession of the property, and the change in title, interest and possession and ownership was without notice to the company.'

"If at the time of the fire there had been no change in the title and ownership of the property, it necessarily follows that there had been no change in the *right* of possession, as distinguished from mere occupancy.

"The defendant claims that under the contract for the exchange of the properties that Kendrick was the owner of the mill property at the time of the fire, relying upon the principle that equity 'looks upon things agreed to be done as actually performed,' and citing *Hurt* v. *Jones,* 75 Va. 341, 346.

"But the case and doctrine relied upon presuppose the existence of a *valid* and enforceable contract. Upon principles of public policy, Aston could not have at the time of the fire, nor at any time, enforced the contract, because Mrs. Kendrick had never signed it, and she was part owner of the farm and had her dower interest in the remainder of

the land. *Haden* v. *Falls and others,* 115 Va. 779 [80 S. E.. 576, Ann. Cas. 1915 C, 1034]. Nor could the contract have been enforced at the instance of either party, because it was conditional and dependent upon the will of third persons, namely, the lien creditors of both parties. *Fire & Marine Ins. Co.* v. *Morrison,* 11 Leigh (38 Va.) 367 [36 Am. Dec. 385].

"In the case last cited there was a contract of sale and the purchaser was to procure an assignment of a bond of a third person in part payment for the residue, and it was verbally agreed between the parties, as in the case at bar, that the vendor should assign the insurance to the vendee. There was a loss of the house on the property by fire before the trade was closed by deed. The contract was subsequently carried into effect by the parties, as was done in the case at bar. It was held that the vendor could recover on the policy because he did not have a contract which he could specifically enforce in a court of equity.

"In *Christian* v. *Cabell et al,* 22 Gratt. (63 Va.) 82, there was a contract for the sale of property which was encumbered. There was a loss by fire before the vendor removed the encumbrance. The contract was not enforced, the court holding as 'the result of all the cases' that 'any loss occurring to the property before the vendor was in a condition to convey a clear, unincumbered title must fall on him, and not on the purchaser' (p. 107). See, also, *Tazewell Coal & Iron Co.* v. *Gillespie and others,* 113 Va. 134, 143 [75 S. E. 757]; *Newberry* v. *French,* 98 Va. 479, 487 [36 S. E. 519].

"In *Rochester Ins. Co.* v. *Monumental Sav. Ass'n,* 107 Va. 701 [60 S. E. 93], in considering the identical clause involved in the case at bar at page 704 [60 S. E. 94], the court held: 'The insured will be construed to be the unconditional and sole owner, although he may have given an option or made a conditional sale, which he cannot specifically enforce, and where the risk of loss by fire continues to be his.'

"But the defendant claims that in any event there was such a change in the possession of the mill property as to amount to a breach of the condition and avoid the policy. As already observed, if there has been no change in the title or ownership by reason of the contract, it would seem to follow necessarily that there has been no change in the legal right of possession of the property. That the change of possession contemplated by the policy is a change in the lawful right of possession as distinguished from mere occupancy, seems to be the reasoning if not the result of the decision of *Georgia Home Ins. Co.* v. *Bartlett,* 91 Va. 305, 312, 313 [21 S. E. 476, 50 Am. St. Rep. 832].

" 'Possession under the alienation clause means, in general, the right of possession, rather than the physical occupancy of the property.' Richards on Ins. (2d ed.), sec. 147, p. 161, 2 Cooley's Briefs on Law of Ins., p. 1723.

"A case which seems to be exactly in point and instructive on almost every phase of the case at bar, wherein the defendant was the same, the policy was the same, where there was an executory contract for the sale and exchange of properties and deeds placed in escrow upon conditions as to title, a loss by fire, and similar in other particulars, is that of *Pomeroy* v. *Aetna Ins. Co.,* 86 Kan. 214, 120 Pac. 344, Ann. Cas. 1913 C, 170, 38 L. R. A. (N. S.) 142, and *note.* At page 218 of 86 Kan., at page 346 of 120 Pac., at page 145 of 38 L. R. A. (N. S.) Ann. Cas. 1913 C, 170, the court said: 'There was no transfer of the title to the land nor of the right of possession to either property to which the contract applied. Occupancy had been exchanged, but it seems apparent that, in case of the failure or inability of either party to comply with the conditions of sale and purchase, the other could have recovered the occupancy of his own property.'

"Where, under a contract which the vendor cannot enforce and with which the vendee is not bound to comply, a

loss by fire results, the vendor may recover, although the vendee has possession and has paid as much as $1,200 on a total of $6,000. *Phoenix Ins. Co.* v. *Kerr* (U. S. Cir. Ct. of App., 8th Cir.), 129 Fed. 723 [64 C. C. A. 251], 66 L. R. A. 569; digested and cited with approval in *Rochester Ins. Co.* v. *Monumental Sav. Ass'n,* 107 Va. 701, 704-705 [60 S. E. 93].

"Defendant also claims that there was an increase of hazard by reason of the change. The policy permits a change of occupants without an increase of hazard. 'In such a case it is for the jury to determine whether or not the change increased the risk.' 2 Cooley's Briefs on Law of Ins., p. 1726.

"All other similar claims and arguments advanced in support of the motion and not hereinbefore specifically discussed seem to be concluded by the verdict of the jury according to 2 Thompson on Trials (2d ed.), section 1290, which reads in part as follows: 'It is a familiar rule in the law of fire insurance that any change in the condition of the property insured, which substantially increases the risk, avoids the policy; but whether such a change has taken place is always a question of fact for a jury. Whether the company, in defending an action on a policy, relies upon the falsity of the particular representation, or on the failure to comply with an executory stipulation, it is upon them to prove it; and it is a question of fact in either aspect.'

"One other contention made by defendant is: 'The record shows that the plaintiff has no interest in the policy sued on, and does not seek to recover in terms as beneficiary for Ellis M. Kendrick.'

"The law applicable to this case and to this contention is stated in Wood on Fire Ins. (2d ed.), sec. 353, Vol. I, p. 736, as follows: 'A mere contract to sell property covered by insurance, even though the insured has bound himself to convey upon the performance of conditions, does not affect

the validity of the policy, and, if a loss occurs before the conditions are performed, a recovery may be had by the insured even though the conditions are subsequently performed, and, if it was agreed that the policy should be assigned to the purchaser, the judgment will inure to his benefit.'

"Under section 2860 of the Code, Kendrick could have sued in his own name, but not having done so, a recovery for his benefit is not thereby barred. It appearing from the record that the suit is in fact for the benefit of Kendrick, the judgment may be so marked and rendered even after verdict. The endorsement of the fact 'is sometimes not made until after the execution is issued.' *Western Union Tel. Co.* v. *Bank,* 116 Va. 1009, 1013 [83 S. E. 424, 425]; Burks' Pl. & Pr., p. 57."

For these reasons, the judgment under review must be affirmed.

*Affirmed.*