𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

CULVIN FORD V. J. A. STREET, ET ALS.

March 17, 1921.

Absent, Saunders, J.

1. SPECIFIC PERFORMANCE—*Certainty of Contract—Case at Bar.*—
   In the instant case, a suit for specific performance, complain-
   ant obtained from defendant an option to buy certain real
   property at the price of $10,000. Before this option was closed
   the house on the property was destroyed by fire, and a new
   contract was entered into by which defendant agreed to sell
   the property to complainant for $10,000, payable $100 in cash,
   $8,000 payable by and when the insurance was collected for the
   fire, and on a day certain, upon the delivery of a good and suffi-
   cient deed the remainder of the $10,000 not paid by the insur-
   ance company, making the total sum of $10,000 to defendant
   when the property was fully paid for. Before this contract
   was made, both parties had inquired of the insurance agent
   as to the precise amount of the insurance upon the building
   destroyed, and were informed that it was $8,000. However, it
   afterwards developed that the insurance was $9,000.00.
   *Held:* This contract of sale was not unenforceable because of un-
   certainty, as each of the parties clearly understood that of the
   $10,000 which the vendor was to receive thereunder, $8,000
   was to come from the proceeds of the insurance policies and
   $2,000 was to be paid by the vendee.

2. CONTRACTS—*Construction—Surrounding Circumstances.*—In or-
   der properly to construe every agreement, it is the duty of the
   court, as nearly as may be, to place itself in the position of
   the parties.

3. SPECIFIC PERFORMANCE—*Certainty of Contract—Mutual Mistake.*
   —In the instant case the trial court erred in decreeing that the
   vendee was entitled to a credit for $9,000 upon the purchase
   price because there happened to be $9,000 of insurance upon
   the improvements. The vendee cannot be allowd to profit by the
   mutual mistake of the parties as to the true amount of insur-
   ance. At the time the sale was made the entire proceeds of the
   insurance policy, subject to the liens upon the property, be-
   longed to the vendor, and he should not be held to have as-

signed $1,000 to the vendee when he had no intention of so doing, and the vendee had no idea that he was to receive such a gratuity.

4. DOWER—*Fire Insurance Policy.*—A wife has not a contingent right of dower in the proceeds of an insurance policy on the buildings on her husband's land which were burned.

5. FIRE INSURANCE—*Definition of Policy—Wife's Interest in Policy.*—A fire insurance policy is a contract of indemnity, whereby the assurer indemnifies the assured against certain loss on account of his interest in the property if destroyed by fire. When the loss accrues there arises under the contract a debt due by the assurer to the assured, and there is no principle of law or reason for holding that the wife of the creditor has any interest in such a debt. Not being a party to the contract, she has no more claim thereto or interest therein than she has in any other debt due to her husband.

6. SPECIFIC PERFORMANCE—*Vendee Willing to Accept Deed without Relinquishment of Dower.*—Where a vendee is willing to accept a deed from the vendor without the vendor's wife's relinquishment of her contingent right of dower, and asks no abatement in the purchase price, the vendee is entitled to have the contract specifically enforced. Conversely in the absence of fraud, specific performance will not be decreed of a husband's contract to sell his land, in which his wife has a contingent right of dower which she refuses to release, where the purchaser demands an abatement of the purchase price, or as indemnity by reason of such refusal.

7. COVENANTS—*Agreement by Vendor to Execute a Good and Sufficient Deed—General Warranty Deed—Case at Bar.*—Upon an agreement for the sale of land the vendor must be considered as contracting for a general warranty deed, unless the contrary is clearly shown. In the instant case the contract requires the vendor to execute and deliver a good and sufficient deed of conveyance, and the trial court did not err in construing this to require the vendor to convey by deed with general warranty.

Appeal from a decree of the Circuit Court of Nottoway county. Decree for complainant. Defendant appeals.

*Amended and affirmed.*

The opinion states the case.

*W. Moncure Gravatt* and *L. S. Epes,* for the appellant.

*H. H. Watson* and *T. F. Epes,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

This is an appeal from a decree requiring the appellant specifically to perform a contract for the sale of real estate. The pertinent facts are these: On September 6, 1919, the appellant gave an option in writing to J. A. Street, the appellee, which reads thus:

"Agreement, made this sixth day of September, 1919, by C. Ford, of the town of Burkeville, party of the first part, and J. A. Street, of the town of Burkeville, party of the second part.

"Witness, that the said party of the first part has agreed to sell the said party of the second part, J. A. Street, his tract of land in the town of Burkeville, containing about seven acres, more or less, at the corner of Namozine avenue and Harris Spring road, for the sum of ten thousand dollars ($10,000.00), terms to be arranged on or before the seventeenth day of September. In consideration of one dollar ($1.00) as an option, cash in hand, paid to the party of the first part, receipt of which is hereby acknowledged, said C. Ford agrees to deliver the said premises to the said Street on or before the seventeenth day of Septembr, 1919."

Eight days later, September 14th, the dwelling-house and its contents were totally destroyed by fire. The appellee had not exercised his right to close the option at that time, and on September 16th the vendor wrote at the bottom of this agreement: "This option is extended for sixty days." On the same date the parties concluded an agreement for the sale of the property, then consisting of a vacant lot upon

which the improvements had been destroyed, and this agreement reads thus:

"This agreement, made this 16th day of September, 1919, by C. Ford, of Burkeville, Va., party of the first part, and J. A. Street, of Burkeville, Va., party of the second part.

"Witnesseth, that the said party of the first part agrees to sell, and the said J. A. Street agrees to buy a certain tract of land lying and being in the town of Burkeville at the corner of Namozine avenue and Harris Spring road, containing seven acres, more or less, for the sum of $10,000.00, payable as follows:

"$100.00 cash in hand paid to the said party of the first part by the said J. A. Street, the receipt of which is hereby acknowledged, and the sum of $8,000.00 payable by and when the insurance is collected for the fire which destroyed the residence on the 14th day of September, 1919, and on the first day of October, 1919, upon the delivery of a good and sufficient deed of conveyance and abstract of title to the said property, said Street agrees to pay the remainder of the ten thousand dollars not paid by the insurance company, making the total sum of ten thousand dollars to the said party of the first part when the property is fully paid for."

, Before this contract of sale was executed, each of the parties had separately inquired of the insurance agent with whom the policies of insurance had been placed as to the precise amount of the insurance upon the buildings, and each was explicitly informed that it was $8,000. The appellant testified that he had directed $8,000 to be written upon the buildings, and $4,000 upon the furniture. Shortly afterwards it was discovered that instead of the $12,000 insurance being thus apportioned, there was $9,000 upon the buildings and $3,000 upon the furniture. It also developed that the wife of the vendor refused to unite in the deed which her husband had contracted to execute to

the vendee, and thereupon the vendor repudiated the contract.

[1, 2] The vendee filed his bill, agreeing to accept a deed for the property without the wife's signature, and without demanding any abatement of the purchase price. It is claimed for the vendor that he is not bound to perform the contract of sale because of its uncertainty. We think, however, that a careful consideration of the pertinent facts showed that the only uncertainty which exists is the mistake or uncertainty as to the amount of insurance. We find no such uncertainty in the terms and conditions of the sale. When the contract was entered into, the buildings had been destroyed. The vendee was not undertaking to buy an assignment of the insurance policies. The contract related to the vacant lot, and as we construe the testimony, it is sufficiently clear and definite to justify the decree of the trial court requiring the vendor to convey the property.

In order properly to construe every agreement, it is the duty of the court, as nearly as may be, to place itself in the position of the parties, and from this point of view no fair doubt arises out of the language used in this contract. Each of the parties clearly understood that of the $10,000 which the vendor was to receive thereunder, $8,000 was to come from the proceeds of the insurance policies and $2,000 was to be paid by the vendee.

One clause of the contract appears to us conclusive on this point. After acknowledging the payment of $100 in cash, it recites that the sum of $8,000 is "payable by and when the insurance is collected for the fire which destroyed the residence on the 14th day of September, 1919."

The clause which is relied on for the contrary view immediately follows, and reads thus: "And on the first day of October, 1919, upon the delivery of a good and sufficient deed of conveyance and abstract of title to the said property, said Street agrees to pay the remainder of the ten thousand dol-

lars not paid by the insurance company, making the total sum of ten thousand dollars, to the said party of the first part when the property is fully paid for."

This clause, if the attendant circumstances and the context are both disregarded, supports the contention that the purchaser was to receive the benefit of the entire amount of the fire insurance policies, and only to pay such part of the $10,000 as might not be thus provided for. It must be remembered, however, that the parties were not entering into a contract of hazard; that before agreeing upon the terms of sale they both inquired as to the precise amount of insurance upon the buildings and both entered into the agreement with the distinct mutual understanding that $8,000 was the amount of the purchase price which was to be paid out of the proceeds of the insurance policies.

There is little profit in considering what construction might have been put upon the contract if some other than the true state of affairs had developed, and yet it may assist us in construing the language used to consider what would have been the rights of the parties if the whole insurance of $12,000 had been placed upon the buildings and collected. Would it then be held that any court of equity would release the vendee from the payment of any part of the agreed purchase price for the vacant lot, and thus to make him a present of it? Or, taking another view, suppose it had developed that there was only $1,000 of collectible insurance upon the improvements. Would any court have required the vendee to pay $9,000 for the vacant lot for which by clear understanding with the vendor at the time the contract was signed he was to pay $2,000?

In our view, there can be but one answer to the questions presented by this record, and that is that the contract is clear, definite and certain, to the effect that the vendee was to pay approximately $2,000 for the vacant lot which was the subject of the contract, which, of course, justifies its specific enforcement.

[3]   It follows from what we have said that we think the court erred in decreeing that the vendee was entitled to credit for $9,000 upon the purchase price because there happened to be $9,000 of insurance upon the improvements. As he would not have been made to assume the loss if the property had been entirely uninsured, so he cannot be allowed to profit by the mutual mistake of the parties as to the true amount of insurance. At the time the sale was made, the entire proceeds of these insurance policies, subject to the liens upon the property, belonged to the vendor, and he should not be held to have assigned $1,000 to the vendee when he had no intention of so doing, and the vendee had no idea that he was to receive such a gratuity.

[4, 5]   It is suggested by the vendor that an uncertainty grows out of the fact that the wife of the vendee has a contingent right of dower in the proceeds of the insurance policy on the buildings which were burned. We hardly think this suggestion needs any extended treatment. A fire insurance policy is a contract of indemnity, whereby the assurer indemnifies the assured against certain loss on account of his interest in the property if destroyed by fire. When the loss accrues there arises under the contract a debt due by the assurer to the assured, and we know of no principle of law, or reason, for holding that the wife of the creditor has any interest in such a debt. Not being a party to the contract, she has no more claim thereto or interest therein than she has in any other debt due to her husband.

[6]   It is claimed that the contract cannot be enforced against the husband leaving the wife's inchoate and contingent right of dower in the real estate unaffected. This question must be regarded as settled in Virginia, for it is expressly held in *Steadman* v. *Handy,* 102 Va. 383, 46 S. E. 380, that where the vendee is willing to accept such a deed without the wife's relinquishment of her contingent right

of dower, and asks no abatement in the purchase price, the vendee is entitled to have the contract specifically enforced. The subject is also thoroughly discussed in the case of *Haden* v. *Falls*, 115 Va. 779, 80 S. E. 576, Ann. Cas. 1915C, 1034, where the converse of the proposition is held—that in the absence of any allegation of fraud, a court of equity will not, at the instance of the vendee, decree specific performance of a husband's contract to sell his land, in which his wife has a contingent right of dower which she refuses to release, where the purchaser demands an abatement of the purchase price, or an indemnity by reason of such refusal. It must be regarded as settled in Virginia that where, as in the case in judgment, the vendee is willing to pay the agreed price and to accept the deed without the wife's signature, the husband may be compelled to perform his contract and to convey what he has agreed to convey.

It is urged, however, that this case comes within the doctrine of *Clinchfield Coal Co.* v. *Sutherland*, 114 Va. 20, 75 S. E. 765, in which it was held that the wife could not be compelled by the court, when not a party to the contract, to convey her contingent right of dower, and it is claimed that to require the appellant in this case to convey the property operates as an indirect coercion upon the wife, and that the court should not indirectly do what it cannot directly do. But that case has little value here, because there is neither direct nor indirect attempt to coerce the wife. Her rights at the end of this litigation will be unimpaired and unaffected thereby. The mere fact that an obligation rests upon her husband because of his warranty can no more be said to coerce her than the existence of any of his other debts or pecuniary obligations may thus affect her. She has no present vested interest in his property, and can have none after his death except in that portion of it which remains after the payment of his just debts.

[7]   It is also urged that the court erred in requiring the vendor to convey the property with general warranty. It is only necessary to say as to this that the cases of *Rucker* v. *Lowther*, 5 Leigh (33 Va.) 269, and *Goddin* v. *Vaughan*, 14 Gratt. (55 Va.) 117, must be regarded as a conclusive refutation of this contention, for the accepted rule is that upon an agreement for the sale of land the vendor must be considered as contracting for a general warranty deed unless the contrary is clearly shown.   In this case the contract requires the vendor to execute and deliver a good and sufficient deed of conveyance, and the trial court did not err in construing this to require the vendor to convey by deed with general warranty.

Our conclusion then is to amend the decree appealed from by requiring the vendee, J. A. Street, to pay $2,000 instead of $1,000, as purchase money for the property to be conveyed, and only upon such payment, or deposit to the credit of this cause in the Circuit Court of Nottoway county, will he be entitled to have the decree complained of enforced. And thus amended the decree will be affirmed.

*Amended and affirmed.*