28405.   PROVIDENCE WASHINGTON INSURANCE CO. *v.* PASS, for use, etc.

DECIDED DECEMBER 5, 1940.   REHEARING DENIED DECEMBER 20, 1940.

*Marvin A. Allison, MacDougald, Troutman & Arkwright, Dudley Cook,* for plaintiff in error.

*Boyd Sloan, Sam S. Harben,* contra.

MACINTYRE, J.   R. V. Pass brought suit on a combination fire, theft, and property-damage insurance policy issued to him by the Providence Washington Insurance Company, hereafter referred to as defendant.   The case proceeded to trial with Pass, the insured, as plaintiff, but subsequently the petition was so amended that Pass sued "for the use of C. V. Nalley."   The jury rendered a verdict for the plaintiff in the sum of $385, and a judgment was entered on that verdict.   The defendant's amended motion for new trial was overruled and it excepted.   The defendant issued said policy to Pass on a Plymouth automobile owned by him.   The provision of the policy with which we are concerned is as follows:   "Except as

to any lien, mortgage, or other encumbrance specifically set forth and described in paragraph D of this policy [none being set forth], this entire policy shall be void, unless otherwise provided by agreement in writing added hereto, if the interest of the assured in the subject of this insurance be or become other than unconditional and sole lawful ownership, or if the subject of this insurance has ever been stolen or unlawfully taken prior to the issuance of this policy and not returned to the lawful owner prior to the issuance of this policy, or in case of transfer or termination of the interest of the assured other than by death of the assured, or in case of any change in the nature of the insurable interest of the assured in the property described herein either by sale or otherwise, or if this policy or any part thereof shall be assigned before loss." On April 15, 1936, after the issuance of the policy, the plaintiff entered into a contract to sell the automobile to C. V. Nalley, it being agreed that plaintiff was to be given a $500 allowance for his old car and was to pay in addition thereto $250 in cash for a new car when the kind of car he had ordered was procured. No credit was extended and no credit entry was made on the books of Nalley, and no definite time was set for the delivery of the new car, but Nalley was to deliver it as soon as he could get the type of car that plaintiff wanted. The plaintiff was a rural mail carrier and needed a car in his business, and he and Nalley agreed that if Nalley had a prospective purchaser for the old car Nalley would send him something to drive and take the insured automobile and show it to such prospective purchaser. It may be here observed that the jury might have found it significant that Nalley, after said agreement was made, was forced to get permission from Pass to use the old car when occasion arose to demonstrate it, and might have been influenced by this fact in deciding that said agreement was to sell and there was no sale until Pass received the new car and Nalley received the cash payment of $250 and the old car. The jury may not have understood why Nalley should have to ask permission to use an automobile that he had bought. On April 25, 1936, a Chevrolet automobile was sent the plaintiff to use, and Mr. Camp, Nalley's agent, took the insured car and demonstrated it in Buford for several days, and then sent it to Nalley, in Gainesville, Georgia, to be demonstrated to prospective customers in that city. On May 3, a collection agent of Nalley took the car on a personal trip, and

was en route to Atlanta when he collided with a truck loaded with mules, causing the injury and damage to the insured automobile for which suit was brought. The plaintiff did not know of the collision and the consequent damage to the car until several days later. On May 13, 1936, plaintiff paid Nalley $250, received the new car, and the contract was completed.

The sole question for determination is whether, under the terms of the policy, the "interest" of the plaintiff had "become" other than unconditional and sole ownership. As stated in the plaintiff's brief: "There is *one issue and only one.* If at the time of the loss to the insured's property the interest of the insured was other than unconditional and sole ownership, then plaintiff can not recover. If, on the other hand, at the time of the loss, his interest in the insured property was unconditional and sole ownership, he can recover." It is not contended that the plaintiff had mortgaged the property or had given any conditional bill of sale to it. Therefore, it seems that the question is whether the plaintiff changed his interest in the property by a contract of sale to Nalley under the above-quoted provision of the policy of insurance.

It is argued that because the Nalley company had physical possession of the automobile at the time it was wrecked, this amounted to a breach of the insurance contract under the provision above quoted. This court has held: "The word 'interest,' as applied to property, is broader than the word 'title.' It is practically synonymous with the word 'estate.' In *Lowery* v. *Powell,* 109 *Ga.* 194 (34 S. E. 297), quoting from Anderson's Law Dictionary, Justice Little says, 'An estate is defined to be the quantity of *interest* which a person has, . . from absolute ownership down to naked possession.'" *Widincamp* v. *Phenix Insurance Co.,* 4 *Ga. App.* 759, 760 (62 S. E. 478). In *Giles* v. *Citizens Insurance Co.,* 32 *Ga. App.* 207 (122 S. E. 890), the policy of insurance provided that it would be void "if the interest of the insured in the subject of the insurance was other than 'unconditional and sole ownership.'" In the course of the opinion Judge Jenkins, speaking for the court said that, "The insured will be deemed to have 'sole and unconditional' ownership within the meaning of the policy whenever, under a claim of right, he has the exclusive and undisputed use, possession, and enjoyment of the property." What is herein said is based upon the evidence being taken in its most favorable

light for the plaintiff, that is, upholding the verdict. It must be noted that here there had been no change in the legal right of possession of the automobile, but merely a surrender of the physical possession. There is a distinction to be drawn, under alienation clauses in a contract of insurance, between lawful right of possession and mere physical occupancy, and the change of possession contemplated by the above definition of the provision of the policy in question is the *lawful right of possession*. Ætna Ins. Co. *v.* Aston, 123 *Va.* 327 (8) (96 S. E. 772). In the instant case there was no transfer of the title to the automobile, or of the legal right of possession of the property to which the insurance contract applied. Physical occupancy, or possession, of the automobile had been surrendered, but it seems apparent that Pass could have regained actual physical possession at any time before the final consummation of the contract of sale. Pomeroy *v.* Ætna Insurance Co., 86 Kan. 214 (120 Pac. 344, 38 L. R. A. (N. S.) 142, 145, Ann. Cas. 1913C, 170). The provision here refers to some change of interest which makes the loss fall upon another person, so that the insured would lose his disposition to maintain and protect the property. 29 Am. Jur. 505, § 630. It has no application to the mere right which another may acquire to purchase the property which does not change the right in case of loss. Libby Lumber Co. *v.* Pacific States Fire Insurance Co., 79 Mont. 166 (255 Pac. 340, 60 A. L. R. 1); 29 Am. Jur. 606. "An executory contract of sale entered into by insured, and not consummated before loss, is not a breach of a condition that the interest of the insured shall remain 'sole and unconditional.'" 26 C. J. 233, § 285. This is another way of saying that a contract (agreement) to sell has not progressed "far enough to place any of the insured's former interest into the third person." *Widincamp* v. *Phenix Insurance Co.,* supra. The mere executory agreement to sell an automobile does not constitute a change of interest which violates the stipulation against the change of interest in the contract of insurance (29 Am. Jur. 508, § 637); and "if, during use and trial of personal property by a prospective buyer the property is covered by a fire-insurance policy, issued to the original owner insuring against loss by fire, and the property is destroyed by fire, it will not defeat the insured's right to recover on the policy." 29 Am. Jur. 508, § 637. In the instant case we think

the jury were authorized to find that there was merely an executory agreement to sell, and that the turning over of the old car by the insured to Nalley to be used for demonstration purposes, with prospective buyers, made Nalley's possession "derivative possession," which is defined in Black's Law Dictionary as "the kind of possession of one who is in the lawful occupation or custody of the property, but not under a claim of title of his own, but under a right derived from another, as, for example, a tenant, bailee, licensee," etc.; and that such turning over of the car to the dealer for demonstration purposes did not violate the stipulation in the contract of insurance against change of interest in the insured property. Ætna Ins. Co. *v.* Aston, supra.

Nor do we think a forfeiture of the policy should be allowed on any theory that specific performance of the contract between the Nalley company and Pass could have been obtained in equity. A party pleading a forfeiture must make it clear that a forfeiture has taken place. He can not speculate upon what a court of equity would do in a given case. Even if this court should believe that specific performance of the contract could be decreed, the relief would not be granted. Garner *v.* Milwaukee Ins. Co., 73 Kan. 127 (84 Pac. 717, 4 L. R. A. (N. S.) 654, 117 Am. St. R. 460, 9 Ann. Cas. 459).

The defendant in paragraph 5 of its answer said: "The plaintiff stated [at the time of filing his claim] that he was 'the sole and unconditional owner of said Plymouth automobile and there are no encumbrances thereon,' which this defendant says was untrue, the plaintiff having on April 25, 1936, sold said automobile and parted with title thereto, as will more fully appear hereafter. Defendant says, therefore, that the plaintiff did not comply with the provisions of said policy of insurance." And in paragraph 8, which is the last paragraph of its answer: "Defendant says that in and by the terms of the policy here sued upon, it is provided that ' . . this entire policy shall be void, unless otherwise provided by agreement in writing added hereto, if the interest of the assured in the subject of this insurance be or become other than unconditional and sole lawful ownership, . . or in case of transfer or termination of the interest of the assured other than by death of the assured, or in case of any change in the nature of the insurable interest of the as-

sured in the property described herein either by sale or otherwise.' Defendant says that on or about April 25, 1936, and prior to the date of the collision referred to in plaintiff's petition, the plaintiff sold and delivered the Plymouth automobile, covered by said policy, to C. V. Nalley. By reason of said facts, the said policy thereupon became void and the plaintiff is not entitled to any recovery whatever thereon."

The judge charged the jury on each contention made by the answer, and in the only two places in the answer in which the defendant specifically referred to a violation of the provisions of the policy it expressly said that the violation was on account of the fact that the plaintiff "had sold said automobile," and the judge, still apparently following the answer in the last part of his charge, said: "If on the other hand, you find under these instructions and the evidence that there had not been a change of ownership, then you go into the question of the amount that the plaintiff would be due under this policy of insurance, and that would be as stated in the policy, the full cash value of the automobile at the time of the loss less fifty dollars and less the amount of the value that was still in the automobile after the wreck, and you will find these facts from all the evidence in the case which you have before you." Thus it seems to us that the last part of the judge's charge (before he instructed the jury as to the form of their verdict) was still following the form and substance of the defendant's answer, which stated in the last paragraph that the reason the policy had been violated was that "the plaintiff sold and delivered the Plymouth automobile covered by said policy to C. V. Nalley," and "by reason of said facts the said policy thereupon became void and the plaintiff is not entitled to any recovery whatever thereon." Thus there was no reversible error disclosed in the above quoted excerpt from the judge's charge, as against the defendant (plaintiff in error), for any reason assigned by it.

3. Applying the law to the facts in this case the verdict for the plaintiff was authorized, and the motion for new trial was properly overruled.

*Judgment affirmed. Gardner, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. I can not agree with the majority opinion. Generally speaking, an executory contract of sale entered

into by the insured, not consummated before loss, is not a breach of the condition that the interest of the insured shall remain sole and unconditional. 26 C. J. 233. "But where the executory vendee has deviated from the usual practice and has, in addition to his executory contract, and pending its fulfilment, taken actual possession and control of the property, by the better authority the policy is held avoided." Richards on the Law of Insurance, 385, § 245; Brighton Beach Racing Asso. v. Home Insurance Co., 47 Misc. 177 (93 N. Y. Supp. 654); Tucker v. Royal Insurance Co., 220 Ala. 103 (124 So. 215); Cardwell v. Virginia State Insurance Co., 198 Ala. 211 (73 So. 466). The effect of the insured in allowing the Nalley company to take possession of the property for demonstration purposes and in agreeing to take a credit of $500 therefor on the purchase of a new automobile, was, so far as the policy in question is concerned, to retain legal title in himself, and the Nalley company to acquire an equitable interest in the insured property. The provision here with reference to the change of interest refers to some change of interest which would make the loss fall upon some person other than the insured (Libby Lumber Co. v. Pacific States Fire Insurance Co., 79 Mont. 166, 255 Pac. 340, 60 A. L. R. 1); and one "who has contracted to sell real estate to another who can enforce specific performance is not the unconditional and sole owner of the property, although the record title is still in his name. . . The interest of a *purchaser* under an executory contract of sale is the sole and unconditional ownership, within the true meaning of the ordinary clause on that subject in insurance policies, because the vendor may compel the vendee to pay for the property and to suffer any loss that occurs." (Italics mine.) 14 R. C. L. 1058, § 234. Generally, in Georgia, where title is reserved in the vendor until certain conditions are complied with, the loss or destruction of the subject-matter of the sale falls on the vendor *where the vendee is without fault.* Code, § 96-108. But it must affirmatively appear that the property was destroyed through no fault of the vendee. *Wells* v. *Fay & Egan Co.,* 143 *Ga.* 732 (85 S. E. 873). The complete reply to the contention by the plaintiff that "the law requires the holder of the title to bear the loss," is this: The evidence does not show that the insured property was wrecked without the vendee's fault. All that the evidence discloses concerning the wreck is the bare fact that Mr.

Bowen was working for the vendee, the Nalley company, and was going to Atlanta in the automobile in question on a "personal trip," and "collided with a truck loaded with mules." This was not sufficient. It must affirmatively appear that the property was damaged without the vendee's fault. *Wells* v. *Fay & Egan Co.,* supra. The loss here falls on the vendee, and therefore I think that there was such a change in the "interest" of the plaintiff in the insured property as voided the policy. See *Watts* v. *Phenix Insurance Co.,* 134 *Ga.* 717 (68 S. E. 479) ; Continental Insurance Co. *v.* Michaels (Tex. Civ. App.), 13 S. W. 2d, 465. In my opinion the court erred in denying a new trial.

ON MOTION FOR REHEARING.

MacINTYRE, J. We have carefully read the plaintiff in error's motion for a rehearing and when we apply the rule that "a jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration" (*Sappington* v. *Bell,* 115 *Ga.* 856, 42 S. E. 233), and the rule that after verdict, in passing upon the motion for a new trial, that view of the evidence which is most unfavorable to the plaintiff in error must be taken, for every presumption and every inference is in favor of the verdict (*Vandeviere* v. *State,* 58 *Ga. App.* 18, 197 S. E. 338), to the facts in the instant case, we do not think that judge erred in overruling the motion for new trail. None of the grounds of the motion for rehearing are meritorious, and the rehearing is

Denied. *Gardner, J., concurs. Broyles, C. J., dissents.*