## ELLIOTT v. THE ASHLAND MUT. F. INS. Co.

ERROR TO THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued April 21, 1887—Decided January 3, 1888.

1. Where an insurance has become forfeited by a sheriff's sale of the property insured, it is competent for the insurers, having notice of such sale, to waive the forfeiture; and, the property having then been re-acquired by the assured, the obligation of the policy will re-attach thereto.
2. The purchaser of real estate by contract is the equitable owner, and liable to all loss that may befall the property, including loss by fire; wherefore, the holder of such title, for the purpose of insurance may be said to be vested with the entire unconditional and sole ownership of the property.

Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ.; PAXSON and STERRETT, JJ., absent.

No. 382 January Term 1887, Sup. Ct.; court below, No. 391 May Term 1885, C. P.

On April 21, 1885, an action of covenant was begun by Michael Elliott, for use of Susan Dougherty, against The Ashland Mutual Fire Insurance Co., of Pennsylvania, to recover upon a policy of insurance. The plea was, "non infregit conventionem, performed, with leave to give in evidence special matter."

At the trial on March 17, 1886, before CYRUS L. PERSHING, P. J., the following facts appeared: On March 18, 1878, Michael Elliott, the owner in fee of a house and lot in Ashland borough, procured the house to be insured for $1,000, for three years, in the said insurance company. On March 18, 1881, he again insured the same property in the same company, for the same amount and period, the policy being issued for the use of the Savings and Loan Association in Ashland which then held a mortgage upon the property for $800. During the term of this policy, a second mortgage and two judgment liens were entered against the property insured. On December 30, 1882, the property was sold at a sheriff's sale, upon one of the judgments, to C. G. Murphy, who received the sheriff's deed therefor. On December 31, 1883, Elliott by a written contract purchased the property back from Murphy for $704.65, of which $204.65 was paid, the property remaining subject to the Savings and Loan Association's mortgage, undivested by the sheriff's sale.

On March 18, 1884, Mr. Elliott obtained from the said company a third policy, numbered 381, for $1,000, " on the following property as described in application and survey, No. 381, which is hereby declared to be part of this policy and a warranty on the part of the assured, viz.: [property described, being that previously owned by Elliott]. Loss if any, payable to Citizens' Savings and Loan Association, as their interest may appear. This policy is issued instead of one bearing same No., upon payment by the insured of the policy fee of one dollar, as per resolution of the directors, extending the time of all renewed policies to five years." Attached to the

policy and by its terms made a part thereof were certain " Conditions of Insurance," which, so far as they were relevant, appear hereafter. No application was signed, survey made or premium note given, when this policy was issued, but the application and premium note referred to were those given when the policy of March 18, 1881, was issued. On December 10, 1884, Elliott paid an assessment upon the premium note. The property was wholly destroyed by fire on January 3, 1885.

Testimony was adduced on the part of the plaintiff which tended to show that the insurance company had knowledge of the sheriff's sale of the plaintiff's property and that he had bought it back from the purchaser; that after the term of the second policy expired the secretary of the insurance company, who was also the secretary of the Savings and Loan Association, urged Elliott to get the property insured for the benefit of the said association, as he was not satisfied to allow the mortgage to run on without insurance; that when the policy was issued the secretary knew the state of the title; that at the time of the fire the Savings and Loan Association's mortgage had been paid to a balance of $93.14.

At the close of the plaintiff's case the following motion was made:

Mr. Marr, defendant's counsel, moves to enter a nonsuit for plaintiff on the ground that the testimony as given shows that the policy amongst other conditions, contains the following: " If the interest in the property to be insured be a lease or other interest not fee simple absolute, it must be stated in the policy, otherwise the same shall be void." Again: " No insurance, whether original or continued, shall be considered as binding until the actual cash payment of the premium." Again: " No agent of this company shall have power to violate any of these conditions." And prior to this: " And the said company shall in no case be deemed to have waived a full, literal and strict compliance with and performance of each and every of these terms, provisions, conditions and stipulations in this policy contained and hereto annexed, to be performed and observed by and on the part of the insured and every person claiming by, through or under them, unless such waiver be expressed and manifested in writing under the signature of

the said company." "The insurance under this policy shall cease at and from the time the property hereby insured shall be levied on or taken into possession or custody under any proceeding in law or equity, and should there during the life of this policy an encumbrance fall or be executed upon the property insured sufficient to reduce the full interest of the insured in the same to a sum equal to or below the amount insured and he neglect to obtain the consent of the company thereto, then, in that case the policy shall be void." Again: " Encumbrances if any, on the same shall be stated and the nature of the interest to be insured, if other than fee simple title and ownership. Also such facts relating to the material risks." " It is furthermore agreed and declared that this policy is made and accepted in reference to these obligations, also the conditions hereto annexed, which are hereby made a part of this policy to be used and resorted to in order to explain the rights and obligations of the parties hereto."

The court directed the entry of a compulsory nonsuit, with leave to the plaintiff to move, etc. Subsequently the court discharged a rule to take off the nonsuit and entered judgment for the defendant, whereupon the plaintiff took this writ assigning said orders as error.

*Mr. James Ryan* (with him *Mr. M. M. L' Velle*), for the plaintiff in error:

1. By the purchase under articles from Murphy the equitable title to the property insured was revested in Elliott, subject to the payment of $500, the balance of purchase money. This gave Elliott an insurable interest: Farmers & M. Mut. Ins. Co. v. Meckes, 10 W. N. 306. A purchaser is the equitable owner and responsible for all loss that may befall the property, including loss of buildings by fire: Reed v. Lukens, 44 Pa. 200; Columbia Ins. Co. v. Cooper, 50 Pa. 341; Harris v. Ins. Co., 50 Pa. 348: Coursin v. Insurance Co., 46 Pa. 323; and he is not guilty of misrepresentation, if he represent the premises as his when he applies for insurance : Remsey v. Insurance Co., 17 Blatchf. 527; Pelton v. Insurance Co., 77 N. Y. 605; Smith v. Insurance Co., 6 Cush. 448; Ætna F. Ins. Co. v. Eyler, 16 Wend. 385; Tader's Ins. Co. v. Robert, 9

Wend. 406; Givney v. Insurance Co., 1 Wend. 85; Locke v. Insurance Co., 13 Mass. 67; Wood Ins., § 275, p. 503; Farmers, etc., Trust Co. v. Insurance Co., 51 Barb. 33; Redfield v. Insurance Co., 56 N. Y. 354; Wood Ins., § 266, p. 493. It follows that under the clause of the policy requiring that "If the interest in the property to be insured be a leasehold, or other interest not a fee-simple absolute, it must be stated in the policy, otherwise the same shall be void," if there was no misrepresentation by the insured as to his title, the clause is satisfied by the insurance of the equitable interest of the insured, under the general title of property.

2. But, when the second policy was issued in 1881, Elliott was the owner in fee. During the life of that policy he was sold out by the sheriff. Then in December, 1883, Murphy sold back to Elliott and the policy afterwards issued and now in suit, expressly provides that it is issued instead of the second one, as by the resolution of the board of directors extending the time of all renewed policies to five years. This was a continuance of the obligation of the second policy, and did not require a disclosure of incumbrances created after the date of the second policy: Fayette Co. Mut. Ins. Co. v. Neel, 6 W. N. 233.

3. Notice from a stranger, or any other source, operates as a waiver, by way of estoppel, of all those clauses in a policy which require the assured to give notice of increase of risk or change of title: May Ins., 612, 626; Buckley v. Garrett, 47 Pa. 204; Coursin v. Insurance Co., 46 Pa. 323; Buckley v. Garrett, 47 Pa. 212; Viall v. Insurance Co., 19 Barb. 440; Frost v. Insurance Co., 5 Den. 154. A continuance to act under the terms of an expired contract, concludes the party: Good Intent Stage Co. v. Hartzell, 22 Pa. 277; Brown v. Insurance Co., 41 Pa. 187; Insurance Co. v. Slockbower, 26 Pa. 199.

*Mr. W. A. Marr,* for defendant in error:

The question is, not whether Elliott had any interest or not, but, his policy requiring him to declare his interest under penalty of forfeiture, he representing that the legal title was in him, and it being disclosed on the trial that he had but an equitable interest, is not the policy void? Farmers & M. Mut. Ins. Co. v. Meckes, 10 W. N. 307; Sweeny v. Insurance Co.,

20 Pa. 342. He must therefore prove title in fee: Smith v. Insurance Co., 25 Barb. 503; Birmingham v. Insurance Co., 42 Barb. 459; Kible v. Insurance Co., 11 Gray 163. The conditions in the policy were warranties: Pottsville Ins. Co. v. Horan, 89 Pa. 438; McClure v. Insurance Co., 90 Pa. 277; Commonwealth Mut. F. Ins. Co. v. Huntzinger, 98 Pa. 42; Insurance Co. v. McAnerney, 102 Pa. 335; Kensington Bank v. Yerkes, 86 Pa. 227.

OPINION, MR. JUSTICE CLARK:

The policy in suit was "issued instead of one bearing the same number upon payment by the insured of the policy fee of one dollar, as per resolution of the directors extending the time of all renewed policies to five years." It was not in the form of a renewal; it would seem to have been intended as an extension or continuance of the renewal policy of March 18, 1881. Both bore the same number, referred to the same application, and were upon the same property; one was given "instead" of the other, "extending the time" to five years. It may be, therefore, that neither the policy nor any of the by-laws required a disclosure of the intervening incumbrances; but it is plain, that by the 16th condition of the policy, the contract of insurance had, on December 30, 1882, ceased to exist. Under a proceeding at law, the property insured had been levied upon by the sheriff, and on that day the interest of the assured was sold, and one Charles G. Murphy became the purchaser and owner thereof. After that, for almost a year, Elliott had no title whatever in the property, and, of course, there could be no valid subsisting insurance, where there was no insurable interest. There would be nothing, in such case, for the policy to operate upon.

It was competent, however, for the company, after the agreement of December 31, 1883, by the terms of which Murphy had agreed to convey to Elliott, to waive the forfeiture caused by the sheriff's sale; in which event the obligation of the policy would re-attach, and the contract be continued. If the policy of March 18, 1884, upon which this suit was brought, was issued as an extension of the previous policy of 1881, with notice of the change which had taken place in the title, it was certainly, in itself, an express waiver in writing of the forfeiture, which had previously occurred.

It was one of the conditions of the policy, that if the interest in the property was "a leasehold or other interest, not fee simple absolute, it must be stated in the policy, otherwise the same shall be void." The contention of the company is, that Elliott's interest was under the agreement of December 31, 1883; that his title was not absolute or in fee simple; that the condition of the title was not stated in the policy, and that therefore the policy was void. But the agreement with Murphy was for a conveyance of the fee; Elliott thereby became the equitable owner of the property subject to the payment of the purchase money, which was a lien or incumbrance upon it, and this, as respects the contract of insurance, was equivalent to the fee: Penn. Ins. Co. v. Dougherty, 102 Pa. 568. "When a policy provides, that if the title is not absolute it must be so stated in the policy or it shall be void, the question is, first, whether the insured had really an insurable interest in the property; and second, whether, if the property is destroyed, the entire loss falls upon him:" Wood on Fire Insurance, 195, citing Hough v. City Fire Ins. Co., 29 Conn. 10. See, also, Washington Fire Ins. Co. v. Kelley, 32 Md. 421; Lorrillard Fire Ins. Co. v. McCulloch, 21 Ohio 176, and Pelton v. Ins. Co., 77 N. Y. 605.

The cases in this court are to the same effect. After a contract for the sale of real estate, the purchaser is the equitable owner thereof and, being responsible for the purchase-money, is liable to the whole loss that may befall it, including the loss of the buildings by fire: Reed v. Lukens, 44 Pa. 200. He is not guilty of misrepresentation if he state that the premises are his, although he has not paid the purchase money: Coursin v. Penn. Ins. Co., 46 Pa. 323. Upon this ground, it was held in Millville Mut. Co. v. Wilgus, 88 Pa. 107, that, for the purpose of insurance, the holder of an equitable title, under articles of agreement, may be said to be vested with the entire unconditional and sole ownership. This question has been more fully considered by this court, in a very recent case in the Eastern District, Dunham for use, etc. v. Imperial Fire Ins. Co. of London, ante p. 460, and we think it is unnecessary to further discuss it here.

The substantial question for the jury was, whether or not, at the issuing of the policy of March 18, 1884, the company

had notice of the sheriff's sale to Murphy, and of the agreement of Murphy to reconvey the property to Elliott. It must be conceded that the evidence on this point was meagre, and to some extent unsatisfactory, but there was some evidence, enough we think to send the case to the jury. We do not desire to discuss the testimony; in so doing we might prejudice the next trial; but having stated the law applicable to the case, and suggested the questions of fact, which were proper for the jury, we send the case back for another trial.

The judgment is reversed, and a venire facias de novo awarded.