# Richmond.

## BROWN V. POLLARD.

### March 9th, 1893.

1. LAND—*Parol contract for purchase.*—At law, no contract for the pur-
   chase of land is binding on the purchaser unless it is in writing and
   signed by him or his agent.
2. IDEM—*Recovery back of price paid.*—Where there is no written con-
   tract for the purchase of land, signed by the purchaser or his agent,
   the contract being void at law, he is entitled to maintain an action
   of *detinue,* and recover back anything he may have paid to vendor
   on account of such purchase.
3. DETINUE—*Case at bar.*—Plaintiff and defendant were negotiating, but
   there was no contract in writing between them for the sale and pur-
   chase of certain land. The price was agreed on, but possession was
   not delivered. Defendant asked to see the two notes held by plain-
   tiff, with which the price was expected to be paid; and having got
   possession of them, he refused to deliver them up at plaintiff's
   request. The parties then separated, without concluding the bar-
   gain. In an action of *detinue* to recover back the bonds, the defend-
   ant asked for, and the court refused to give, this instruction: "If the
   jury believe from the evidence that the plaintiff agreed to purchase
   from the defendant certain real estate, and delivered to him the notes
   in the declaration mentioned in payment for said real estate, and
   that the defendant has at all times since the making of said agree-
   ment been ready, willing, and able to convey the real estate con-
   tracted for; by a proper deed, then they must find for the defendant,
   though the agreement made between the plaintiff and defendant
   was never reduced to writing, nor any written memorandum thereof
   made."

HELD:

   The refusal of the court to give this instruction was no error.

Argued at Wytheville. Decided at Richmond. Error to
judgment of circuit court of Roanoke county, rendered at its
October term, 1891, in an action of *detinue* wherein Mrs.

Massie Sutphin, *alias* Pollard, was plaintiff, and Garland Brown was defendant. The judgment being against defendant, he brought the case here on writ of error. Opinion states the case.

*Penn & Cocke*, for appellant.

*G. W. & L. C. Hansbrough*, for appellee.

FAUNTLEROY, J., delivered the opinion of the court.

This action is, in form, *detinue* to recover from the defendant, Brown, (the plaintiff in error,) the possession of two notes for $500 each, executed by W. Lee Brand to the plaintiff, Sutphin, *alias* Pollard, which, the declaration alleges, are unlawfully held and detained from the rightful owner, the plaintiff, Sutphin, *alias* Pollard, by the defendant, the said Brown. The issue was made upon the plea of *non detinet*, and the jury found "that the defendant unlawfully detained from the plaintiff the two notes, each for the payment of $500, dated 19th of March, 1891, and made by W. Lee Brand, the one payable on the 1st day of October, 1892, and the other payable in October, 1893, to the plaintiff." Which verdict the defendant moved the court to set aside and grant to him a new trial, on the ground that the court misdirected the jury in giving and refusing the instructions given and refused; which motion the court overruled, and entered judgment according to the verdict.

The evidence is certified, and it attests the following case : The plaintiff in error, Garland Brown, was negotiating with the defendant in error, Mrs. Massie Pollard, *alias* Sutphin, for the purchase of a certain piece or parcel of land near Salem, which he represented to contain *two* acres. Mrs. Pollard was willing, at that time and upon the faith of his specific

representations, to give to him $900 for the said piece or parcel of land, and tried to get cashed two notes which she held, payable, each for $500, at remote days from their respective dates; but she did not propose to give the notes. He said, if the notes were all right, he would take them and let her have the property at the price of $900. This she was willing then to accept. There were several conversations, and subsequently, in August, 1891, Mrs. Pollard was at the said Brown's office, in Salem, Va., about the trade, accompanied by her daughter, Mrs. Dooley, and Mr. Dooley, her daughter's father-in-law. Brown asked Mrs. Pollard to let him *see* the notes, in response to which she handed them to him. He started out of the office with them, whereupon, instantly, she demanded that he should give the notes back into her possession. Brown replied they "were safe," and took them to the maker, W. Lee Brand, whom he asked if they were all right, and if he had any offsets, to which Brand replied, they were all right. Brown then asked Brand at what discount he (Brand) would cash them, to which inquiry Brand answered, "When you become the owner of the notes, I will let you know."

The notes were non-negotiable, and they were not endorsed or assigned by the obligee, Mrs. Pollard. Brown then returned to the office, and brought with him a Mr. Baer, an attorney, who commenced writing a deed for the land, when Mr. Dooley suggested that there were not two acres in the parcel of land, and that there should be a survey; to which suggestion Brown assented, and agreed to have a survey of land made. Mrs. Pollard again demanded of Brown that he should return to her the notes, which he had gotten out of her possession by his request to her to let him "see them." He (Brown) refused to return them to her, and the parties separated, without any contract concluded, or writing signed by either party. After the lapse of about twenty days Mrs. Pollard sent a messenger to Brown, again demanding that the

notes should be returned to her, which Brown still refusing
to do, she, later on (September 7th, 1891,) brought this action
against Brown to recover possession of the two notes afore-
said. Upon the trial Brown produced (but did not tender to
Mrs. Pollard) a deed for the parcel of land, without any sur-
vey, which deed was executed October 3d, 1891, and which
the said Mrs. Pollard had never seen before that day—Octo-
ber 6th, 1891.

The said deed conveyed the land as part of a boundary or
tract of land which his (Brown's) wife had owned, and which
had been sold to the Baltimore and Ohio Land Company, of
Salem, Va., of which Brown was the president. There was
no evidence to show who held the legal title, nor why Mrs.
Brown executed the deed; nor any evidence even tending to
show that the Baltimore and Ohio Land Company had autho-
rized the land to be conveyed by Brown to Mrs. Pollard.
Brown had never said anything to Mrs. Pollard about the
Baltimore and Ohio Land Company, or his wife, in connec-
tion with the ownership of the land.

At the trial, after the evidence was all in, the court in-
structed (against the objection of the defendant) the jury as
follows : " The court instructs the jury that no contract for
the purchase of land is binding on the purchaser unless it is in
writing and signed by the purchaser or his agent; and the
court instructs the jury that if, from the evidence, they believe
that the plaintiff did not sign a contract in writing for the
purchase of the land concerning which she and the defendant
were negotiating, there was no valid purchase of said land by
the plaintiff, and that she is entitled to recover back anything
she may have delivered to him on account of such purchase;
and the jury must find for the plaintiff on the issue joined in
this case." This instruction rightly propounds the law, and
is pertinent to the evidence, except that it states, hypotheti-
cally, a case much more favorable to the defendant's interest

than was warranted by the evidence—in that it predicates a delivery of the notes by the plaintiff to the defendant, Brown, on account of the purchase of the land, when the evidence is that she never meant to deliver them, and never did deliver them, and that Brown *obtained* them surreptitiously, and *retained* them unlawfully, and against her immediate and oft-repeated demand for them. It is not pretended that there was any written contract or memorandum, and there is no evidence of any concluded agreement; and a court of law can take no notice of any equitable title, except the equitable defense which is allowed, by statute, in actions of ejectment. At law, a parol contract for the sale of land (even though a well-defined and concluded agreement) is void. Boone *on the Law of Real Property,* sec. 380 ; Code of Va. 1887, sec. 2840 ; *Dunsmore* v. *Lyle,* 87 Va. 393.

. The defendant, Brown, offered, and the court refused to give, the following instruction : " If the jury believe from the evidence that the plaintiff agreed to purchase from the defendant certain real estate, and delivered to the defendant the notes in the declaration mentioned, in payment for said real estate, and that the defendant has at all times since the making of said agreement been ready, willing, and able to convey the real estate contracted for, by a proper deed, then they must find for the defendant, though the agreement made between the plaintiff and the defendant was never reduced to writing, nor any written memorandum thereof made."

The refusal of the court to give this instruction is the ground of the only error assigned.

The court did not err in refusing to give the instruction. Not only was there no evidence to prove that there was any concluded agreement by the plaintiff to purchase the land, but all the evidence—even that of the appellant, Brown, himself—expressly shows that the negotiation ended and the parties separated without any concluded contract ; and that, so far

from the plaintiff, Mrs. Pollard, having ever "delivered to the defendant, Brown, the notes in the declaration mentioned, in payment for the said real estate," (as the instruction refused by the court assumed,) she never delivered them in payment at all; and that Brown got them into his hands upon his request to let him "*see them*," and that, when he started out with them to inquire of the maker of them (Brand) as to their verity, Mrs. Pollard demanded that he should hand them back to her, as she did again upon his return from the interview with Brand, who told him that "when you become the owner of the notes, I will let you know." The proposition of law projected in the instruction refused by the court is wholly irrelevant and inapplicable to the case made by the evidence on the trial—even that of the defendant himself.

*At law*, part performance of a parol agreement (for the sale of land) will not exempt it from the operation of the statute of frauds; and the payment of purchase-money is not such part performance as will induce a decree for specific execution. See 1 Chitty on Contracts, p. 422; 2 Minor, p. 858; *Jackson* v. *Cartright*, 5 Munf. 318; *Anthony* v. *Leftwich*, 3 Rand. 255; 2 Lomax Dig. 54.

In *Scott* v. *Bush*, 26 Michigan 418, (12 Amer. Rep. 311,) "plaintiff verbally agreed to purchase land of the defendant, and paid money, with a stipulation that the defendant might retain it as a forfeiture if the plaintiff failed to complete the contract. The defendant was willing, and offered to convey, but the plaintiff refused to perform. *Held:* That the whole agreement was one entire contract; that it was void by the statute of frauds, and that the plaintiff could recover the money paid as money had and received. No possession was given of the land, and the payment was not such an act of part performance as would demand a specific performance. It gave purchaser no rights against the vendor. Until both parties are brought into binding relations, these dealings have no

effect. And the cases which intimate that one party cannot retract, whilst the other is willing, *but is not bound,* to perform, give to the parol agreement all the effect of a solemn contract, and enable agreements to be made, as well as enforced, at the will of one of the parties, without any concurrence of the other. A contract void under the statute of frauds is a mere nullity, and cannot be used for any purpose. We cannot conceive of such a thing as a contract which cannot be enforced as a contract, and yet can be the foundation of legal obligations arising out of nothing else."

Upon the case made by the evidence in the case under review, Mrs. Pollard could not have gone into equity and set up the alleged parol contract of Brown to convey the land to her, and the payment of the purchase-money as such part performance, as would induce even that equity court to decree specific performance against Brown ; and a mere parol contract which could not be enforced against Brown could not bind her in favor of Brown ; mutuality of obligation and remedy must exist *ab initio.* And even if Mrs. Pollard had delivered her notes on Brand to Brown, in payment for a parol purchase of land (which the evidence disproves) which Brown was not able to convey, and was not compellable to convey, he could not lawfully hold on to the notes.

For the foregoing reasons we are of opinion that there is no error in the judgment complained of, and the decree of this court will affirm the judgment of the circuit court of Roanoke county.

JUDGMENT AFFIRMED.