# Richmond.

## Palmetto Fire Insurance Company v. John Fansler.

October 1, 1925.

Absent, Christian, J.

1. Appeal and Error—*Assignment of Error—Assignment that Verdict is Contrary to the Evidence or Without Evidence to Support it—Considera- tion of Other Assignments.*—On appeal, if there is an assignment of error that the verdict for plaintiff was contrary to the evidence or without evidence to support it, and the record presents a case in which it becomes the duty of the appellate court to enter final judgment for defendant, it is unnecessary to discuss other assign- ments that deal with the action of the court upon the admissibility of evidence, and with instructions, and which present no novel proposition.

2. Fire Insurance—*Sole and Unconditional Ownership—Equitable In- terest.*—One having a good title in equity to the property in question is the sole and unconditional owner and the owner in fee simple within the meaning of an insurance policy.

3. Specific Performance—*Contract for Sale of Real Property—Contract with Heirs of Former Owner One of Whom Refuses to Sign Deed Though Paid in Full—Case at Bar.*—Where there was nothing to show what the terms of a contract of sale of property by the heirs of a former owner were, and they do not appear in writing, and one of the heirs had executed no deed and refused to execute one, and the only ground on which specific performance could be asked against this heir was that she had been paid in full, the purchaser is not entitled to specific performance.

4. Fire Insurance—*Evidence—Action by Insured Against Company—Ques- tion of Ownership—Statements by Plaintiff in His Bill in Another Suit— Case at Bar.*—In the instant case, a suit by insured against an in- surance company, where the company denied that insured was the sole and unconditional owner of the property, statements in a bill by insured for specific performance of a contract for the sale of the property to him, are not evidence against the defendant company, especially where it did not appear when the bill was filed or that it was ever filed. While it was proper to show that such a suit was brought, the averments in the bill are not evidence to prove for t

plaintiff the claims there made. So far as the present action is concerned they are but statements made out of court and may be used as admissions against interest and for no other purpose.

5. FIRE INSURANCE—*Evidence—Bill for Specific Performance of Contract of Sale by Heirs of Owner to Plaintiff—Consent of Heir to Sale not Shown—Case at Bar.*—In an action on a fire insurance policy where the defense was that plaintiff was not the sole and unconditional owner of the property, a bill by plaintiff for the specific performance of a contract for the sale of the land to plaintiff by the heirs of the former owner did not show that plaintiff was the sole and unconditional owner of the property where it appeared from the bill that some of the heirs had been paid nothing, had signed no deed, and had made no writing binding on themselves. It was entirely clear that no relief could have been given under this bill by way of specific performance. Here not only are some of the elements lacking necessary to support a decree for specific performance, but all of them are.

6. FIRE INSURANCE—*Sole and Unconditional Owner—Vendee—Contract Must be Capable of Enforcement.*—The contract of sale under which a vendee claims his interest must be one that is capable of being enforced by him at the date of the insurance in order to support the claim that the insured is the sole and unconditional owner of the property.

7. INSURANCE—*Construction Against Insurer—Burden of Proof to Show Title Bad.*—Policies of insurance are to be upheld when possible and provisions therein written are to be construed against the insurer, and the burden of proving the title of the insured bad is upon the company.

8. INSURANCE—*No Written Application—Acceptance of Policy.*—Where there was no written application for an insurance policy, but the policy was issued in due course and was accepted by the insured, the insured became bound by the terms of the policy.

9. FIRE INSURANCE—*Sole and Unconditional Ownership—Ownership in Fee Simple—Validity of Provisions.*—Provisions in a fire insurance policy that it should be void, unless otherwise provided by an agreement in writing, if the interest of the insured be other than unconditional and sole ownership, or if the subject of the insurance be a building on ground not owned by the insured in fee simple, are valid.

10. FIRE INSURANCE—*Owned in Fee Simple—Title in Fee Simple—Absolute Title in Fee Simple.*—The words in a fire insurance policy "owned in fee simple," "title in fee simple," or "absolute title in fee simple" are held not to import that the insured can show indefeasible title, free from defects and good against all persons, or even a valid legal title at all. An outstanding naked legal title, or defects in the title deeds of the insured, if he claims under a deed or other evidence of

title purporting to invest him with an estate in fee simple, do not constitute a breach or avoid the insurance where the policy is conditioned on any of these statements. The good faith of the insured is entitled to consideration.

11. Fire Insurance—*Sole and Unconditional Ownership—Outstanding Interest—Case at Bar.*—In the instant case, an action on a fire insurance policy, the defense was that plaintiff was not, as he represented himself to the insurance company as being, the complete owner of the property. Plaintiff made this representation notwithstanding the fact that he had refused to pay for the property because the title was bad. These defects he had set out in a bill for specific performance against his alleged vendors. They went to the heart of his title. Whether there be outstanding a two-sevenths interest or a one-thirty-fifth interest the same principle applies, for in neither case is the insured the sole and unconditional owner, either in law or in equity.

12. Fire Insurance—*Sole and Unconditional Owner—Owner of an Undivided Interest.*—The owner of an undivided interest, legal or equitable, is not an unconditional and sole owner of the property within the meaning of a policy of insurance, providing that the policy shall be void if insured is not the unconditional and sole owner of the property.

13. Fire Insurance—*Insurable Interest—Sole and Unconditional Ownership.*—One who has an undivided interest in property, legal or equitable, has an insurable interest in the property although he is not the sole and unconditional owner of the property.

14. Appeal and Error—*Final Judgment by Appellate Court—Section 6365 of the Code of 1919.*—Where the verdict of a jury for the plaintiff, in an action by a policyholder against a fire insurance company, should have been set aside and judgment for the defendant entered, the appellate court, under section 6365 of the Code of 1919, on appeal will set aside the judgment for plaintiff and enter judgment for the defendant.

Error to a judgment of the Circuit Court of Campbell county, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*F. P. Christian, Jr.,* for the plaintiff in error.

*Hester & Hester,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is an action by notice of motion for judgment for money on two insurance policies issued by the defendant below to the plaintiff. Both of these cover a dwelling situate in Campbell county. One is of date October 30, 1922, for $1,000.00, and the other of date November 6, 1922, and is for $500.00. The property insured was burned in a short time thereafter and before Christmas. Informal notice of the loss occasioned by this fire was given, and on January 3, 1923, the company wrote counsel for Fansler that it would not pay anything therefor because he did not hold a clear title to the property insured. Thereafter this action was instituted. It matured and in due course was submitted to a jury. There was a verdict for the plaintiff which defendant moved to set aside as contrary to the law and the evidence and as being without evidence to support it. This motion was overruled and judgment entered, to all of which exception was duly taken.

[1] There are seven other assignments of error. If this verdict was contrary to the evidence or without evidence to support it and if the record presents a case in which it becomes the duty of this court to enter final judgment, it is unnecessary to discuss other assignments. They deal with actions of the court upon the admissibility of evidence and with instructions and present no novel proposition.

Putting aside for the present consideration of a certain bill for specific performance, which will be taken up hereafter, it appears from the record that Fansler bought this property in 1912 or 1913 from Max Wood, a son of John Wood, who represented himself as being the agent of all of the heirs of John Wood.

The price agreed upon was $1,000.00. He paid thereon $811.00 and went into possession. Soon afterwards Max Wood informed him that he could not give him good title. Fansler refused to make any further payment and if any further payment was demanded of him such demand was not pressed. The situation was this: His vendor could not give him title and was not in a position to demand from him the balance he had promised to pay. Fansler on his part let things continue in *statu quo*, and remained upon the property till after the fire when he moved to West Virginia. He did, however, in 1915 file a bill for specific perfor-mance noted hereafter in some detail.

Did Max Wood have authority to make this contract of sale and what interest in this property did the John Wood heirs have?

[2] Max Wood did have authority to make a contract of sale for the John Wood heirs' interest, whatever that interest was, but he has delivered no deed to Fansler and so Fansler is without legal title. He claims, however, to have an equitable one sufficient to sustain the policies in issue. It may be said here that if he had a good title in equity, that is all that is necessary.

Dealing with this evidence as upon a demurrer and making every concession that a strict compliance with the rules therefor demands, the jury might have found from it the following facts:

[3] There is on record of date August 18, 1885, a deed for this property from the "Wright heirs" to Max Wood, together with a deed from Max Wood to the John Wood heirs. The deed to Max Wood was not signed by all of the "Wright heirs" and adopting that statement most favorable to the plaintiff, it appears that one of the children of Sarah Hodges, deceased, who was herself a Wright, refused to sign

it at all, although there is some evidence in a general way tending to show that all of the "Wright heirs" had been paid by Max Wood. Assuming this to be true, this Hodges child, who refused to sign this deed, had herself been paid her share of the purchase money due from Max Wood.

It thus appears that there is an outstanding interest in her. She has been paid the amount due her on account of the contract of sale, but has executed no deed and refuses to execute one.

Has Max Wood, or those claiming under him, any power to bring in this interest?

There is nothing to show what the terms of said contract of sale were and they do not appear to have been in writing. At the most we have a case in which specific performance could be asked only on the ground that this heir has been paid in full. This is not sufficient. *Jackson's Assignees* v. *Cutright*, 5 Munf. (19 Va.), 308; *Brown* v. *Pollard*, 89 Va. 701, 17 S. E. 6, 36 Cyc. 650. It follows that there is no way by which this interest can be brought in, and that this Hodges child is a joint owner with the plaintiff, nor has equity any power to give relief against Max Wood for he in turn would have to fall back upon this Hodges heir. These were the reasons which forced Max Wood to confess that he was unable to give good title and which made Fansler unwilling to make further payment or to accept any deed which Max Wood or the children of John Wood were able to tender to him. The contract called for a deed of general warranty.

[4] In 1915 a suit for specific performance was brought by Fansler against all of the Wood and all of the Wright heirs, and the bill has been copied into the record. When this bill was filed does not appear, indeed there is nothing to show that it was ever filed

at all. Manifestly its statements are not evidence against the defendant here. Of course it was proper to show that such a suit was brought, but the averments in the bill are not evidence to prove for Fansler the claims there made. So far as this action is concerned they are but statements made out of court and may be used as admissions against interest and for no other purpose. They do in fact throw some light upon a situation none too clearly appearing in the record.

These statements are there made:

[5] In 1848 John Wyllie and wife conveyed this property to John Wood, trustee, in trust for Wright and wife and their children, and upon the death of the Wright parents this trustee was to convey this property in fee to the children surviving and their descendants. Among the Wright children was Eliza V., now dead, leaving two children surviving, Chap Day and Sam Day. Another Wright child was Sarah Hodges, also dead, who left surviving her five children, Lottie, Sam, Jessie, Sallie and Jennie. The bill further charges that after the death of the Wright father and mother Max Wood executed to John Wood a deed conveying this same property in trust for the benefit of John Wood's wife and children, wherein he recited that he had purchased it from the Wright children, but that there was in fact no deed from the Wright children of record, and that they denied ever having executed any such deed. The bill then goes on to state that there was, however, an agreement under which the Wright children were to convey this property to John Wood for $200.00 and that all of the Wright heirs, except Chap and Sam Day and the five Hodges children, had been paid their portion of $200.00, the purchase price, and that some of them had signed a deed, but that it was never delivered, and had been destroyed by fire. It

also states that the plaintiff had been unable to secure
from Max Wood any deed, and asks that in the event
a deed could not be secured the payment already made
be declared a lien upon the property purchased. It is
entirely clear that no relief could be given under this
bill by way of specific performance. Chap and Sam
Day and the Hodges children had been paid nothing,
had signed no deed and had made no writing binding
themselves. Here not only are some of the elements
lacking necessary to support a decree for specific
performance, but all of them are. A decree against
the Woods would be futile because they in turn would
have to secure a deed from those Wright grandchildren
who have refused to come in, and who are still refusing.

[6] "The contract of sale under which the vendee
claims his interest must be one that is capable of being
enforced by him at the date of the insurance in order
to support the claim that the insured is the sole and
unconditional owner. 7 A. & E. Eng. L. 498."

[7] That policies of insurance are to be upheld when
possible and that provisions therein written are to be
construed against the insurer, has long been settled
law, and the burden of proving the title of the insured
bad is upon the company. *Aetna Insurance Company* v.
*Aston*, 123 Va. 327, 96 S. E. 772, 14 R. C. L., section
229.

[8] There was in this case no written application
for these policies. They did, however, issue in due
course and were accepted. The insured thus became
bound by the terms thereof. *Virginia F. & M. Co.*
v. *Case*, 107 Va. 588, 59 S. E. 369, 122 Am. St. Rep.
875.

Among the terms thereon written are these:

[9] "This entire policy shall be void, unless other-
wise provided by agreement in writing added hereto,

ownership, etc. (a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple."

The validity of these provisions cannot be questioned. *Winchester Fire Insurance Company* v. *Ocean View Company*, 106 Va. 633, 56 S. E. 584, and *Virginia F. & M. Co.* v. *Case, supra.*

[10] Just what is meant by such provisions has been dealt with unnumbered times.

"Statement that insured is owner in fee simple—in general—this statement is now commonly found in connection with one to the effect that the interest of the insured is unconditional and sole ownership, which is discussed below. The words 'owned in fee simple,' 'title in fee simple,' or 'absolute title in fee simple' are held not to import that the insured can show an indefeasible title, free from defects and good against all persons, or even a valid legal title at all. An outstanding naked legal title, or defects in the title or title deeds of the insured, if he claims under a deed or other evidence of title purporting to invest him with an estate in fee simple, do not constitute a breach or avoid the insurance where the policy is conditioned on any of these statements." See *Hankins* v. *Williamsburg City Fire Insurance Company*, 96 Kan. 706, 153 P. 491; L. R. A. 1918-E, page 373, and note on page 375, Ann. Cas. 1818C, 135; 19 Cyc. page 692.

In Joyce on Insurance, section 2048, it is said:

"A condition avoiding a policy 'if the interest of the insured be other than an absolute fee simple' means only that he shall not have a limited interest, but shall claim and hold under a conveyance purporting to invest him with an estate in fee; but an applicant for insurance is not called upon to settle questions of

title with very great precision, and the fact that there is a naked legal title outstanding will not avoid the policy if assured is the entire beneficial owner of the premises."

The good faith of the insured is entitled to consideration. One whose deed purported to be from the surviving children of A and who had bought in the confident belief that said children were all of the surviving children, would have the right as the owner in fee to insure, and his policy would not be forfeited because it turned out afterwards that some brother supposed to have been drowned at sea was in fact rescued and alive.

[11] No such problem is presented here. Fansler represented himself to the insurance company as being the complete owner of this property, and did this, notwithstanding the fact that he had refused to pay for it because the title was bad. These defects he had set out in his bill, they went to the heart of his title and are so fundamental that not even equity's long arm could aid him.

Whether there be outstanding a two-sevenths interest or a one-thirty-fifth interest the same principle applies, for in neither case is the insured the sole and unconditional owner, here confessedly not in law and of necessity not in equity. And this conclusion is inevitable even if every recitation in the bill for specific performance be accepted as evidence.

[12] We know of no case in which the owner of an undivided interest, legal or equitable, has been held to be an unconditional and sole owner. 26 C. J. 217; 14 R. C. L., sec. 229; Joyce on Insurance, section 2042 and *Scott* v. *Liverpool, London and Globe Company*, 102 S. C. 115, 86 S. E. 484, where it is said:

"The contract here stipulates Scott must have owned

the land in fee simple, and if he was not such owner, the contract should be void. He was the owner in fee simple, but it was not sole, for ownership implies soleness. Black's Law Dictionary; Bouvier's Law Dictionary; Webster's Dictionary. If the ownership of a five-sixths undivided interest constituted Scott owner, then the ownership of a much smaller undivided interest would so constitute him. And on the other hand, if a five-sixths undivided interest is not sufficient to constitute him sole owner, neither would the largest undivided interest short of the whole so constitute him. At most, therefore, Scott was only a part owner of the fee-simple title; five-sixths of it was in him, and one-sixth of it in other parties."

In *Phenix Insurance Company* v. *Hilliard*, 59 Fla. 590, 52 So. 799, 138 Am. St. Rep. 171, it is said:

"To be 'unconditional and sole,' the interest or 'ownership' of the insured must be completely vested, not contingent or conditional, nor in common or jointly with others, but of such nature that the insured must alone sustain the entire loss if the property is destroyed; and this is so whether the title is legal or equitable. *Hartford Fire Ins. Co.* v. *Keating*, 86 Md. 130, 38 Atl. 29, 63 Am. St. Rep. 499."

"An undivided interest in the property is not an ownership in fee in the land." Joyce on Insurance, section 2042; *Scottish Union & National Ins.* v. *Petty*, 21 Fla. 399.

The rule has been thus stated:

"When a policy provides that if the title is not absolute it must be so stated in the policy or it shall be void, the question is 1st, whether the insured had really an insurable interest in the property; and 2nd, whether, if the property is destroyed, the entire loss falls upon him." *Elliott* v. *Ashland Mutual Fire In-*

*surance Company*, 117 Pa. St. 548, 12 A. 676, 2 Am.
St. Rep. 703; 26 C. J. 173.

[13] Here the plaintiff had an insurable interest
in this property, but in case of loss the entire burden
would not fall upon him.

Plaintiff has no legal title at all and no equitable title
except an undivided interest.   To hold that he was a
sole and unconditional owner would run counter to
every definition that has ever been written.

[14] Since he was not such an owner, it follows that
he cannot recover.   The verdict of the jury should
have been set aside and judgment for the defendant
entered.   That this court, under authority of section
6365 of the Code, will now do, and it is so ordered.

*Reversed.*