## STERNBERG v. MERCHANTS' FIRE ASSUR. CORPORATION et al.

District Court, E. D. Wisconsin.
March 13, 1934.

Fischer & Brunner, of Shawano, Wis., for plaintiff.

Wolfe & Hart, of Milwaukee, Wis., for defendants.

GEIGER, District Judge.

█ At the conclusion of the testimony, each party unqualifiedly moved for a directed verdict. It is undisputed that the record title of the insured premises was in the plaintiff; that several policies were issued and were in force at the time of the fire; that the policies were written on the standard form prescribed by Wisconsin statutes; and that the premises were insured as a hotel and, at the time of the issuance of the policies, a hotel was being operated or conducted therein; that the amount of loss, if any, is not open to question on the testimony.

With the exception of a reference to be hereafter made respecting the perpetrator of an admitted incendiarism, I accept as the facts to be found the following as submitted on behalf of the defendants:

"That Julius Sternberg, the 47-year old son of the plaintiff owned the premises in

question for a period of seven or eight years prior to the Spring of 1931, and that during such period of time, he and his wife, Norma, had operated a hotel in the premises which were constructed and adapted for that purpose; that during this period, the plaintiff, Theodore Sternberg, had furnished considerable sums of money to the son, Julius, as security for which he held a mortgage on the hotel property; that in the Spring of 1931, the wife of the son, Julius, secured a divorce from him and an alimony allowance of Thirty Dollars ($30.00) per month. Coincident with the commencement of the divorce proceedings, the plaintiff at the request of the son, Julius, instituted foreclosure proceedings, and upon the granting of the divorce, Julius quit claimed his interest in the property to the plaintiff who at the same time paid to the divorced wife, Norma, the sum of Five Hundred Dollars ($500.00).

"At the time of the divorce, the son, Julius, was removed from the premises and thereafter for a period of approximately a year up until the 15th of May, 1932, the divorced wife remained in the hotel property and continued to conduct and operate the same as a hotel. Her tenancy in the hotel was based upon a monthly rental of Fifty Dollars ($50.00) of which sum she was to pay Twenty Dollars ($20.00) in cash and the balance, amounting to Thirty Dollars ($30.-00), was offset by the monthly alimony payment due her from Julius. The monthly rental was reduced after two or three months, so that during the last eight or nine months of her tenancy the rent was completely offset by the alimony, and during this period of her tenancy she paid nothing to the plaintiff.

"The plaintiff testified that Norma removed from the premises not less than a month before the fire. The defendants' witnesses, Fox and Wolfinger, placed the time of her removal at not later than May 15, 1932. After the removal of Norma Sternberg, no business of any kind was carried on in the hotel property.

"Upon the removal of Norma Sternberg from the premises, the plaintiff, Theodore Sternberg, sent the son, Julius, to the place for the purpose of taking care of the property, and, if possible, to secure another tenant or a purchaser for the place. It was not contemplated that Julius was to operate the hotel, although there was testimony that he wanted to but the plaintiff refused to permit it for the reason that he (Julius) could do nothing there without a 'woman.' Julius stayed in the place night times, occupying one of the rooms, and when he was not there, the doors were closed and locked. There is no proof that he prepared any of his meals there, or that he did anything in the way of using the premises except to sleep there. The testimony of the defendants' witnesses, Fox and Wolfinger, as well as of the plaintiff himself, is uncontradicted and conclusive that from the time of the removal of Norma Sternberg the hotel was not operated, and that no business of any kind was conducted in the premises.

"On the night of June 7th, Julius was not in the premises, and on the morning of June 8th at about two o'clock, the place was discovered to be on fire. When the fire was brought under control, it was found that the fire had been wilfully set and that precautions had been taken against its early discovery by covering the window openings in the two rooms in which the fires had been kindled by nailing blankets and other bed coverings over the openings. The fact that the fire was of incendiary origin is not disputed by the plaintiffs."

Two questions arise upon the motions: (1) Whether, upon the removal of Norma Sternberg from the premises, the same ceased to be occupied in accordance with the terms of the policy and remained unoccupied for a period of more than ten days, wherefore, by reason of the cessation of occupancy under the terms of the several policies, they were rendered void; (2) whether the perpetration of incendiarism by plaintiff's agent, under the circumstances detailed in the case, precludes recovery by the assured.

The answer to the first of these questions is readily made in the affirmative when, upon the facts which are quite undisputed, we apply the uniform rule of interpretation formulated in a great number of cases cited on behalf of defendants. That rule has been abstracted and illustratively stated by counsel, thus: "That a building, dwelling or otherwise, to be occupied must be put to the actual and practical use as contemplated by the parties. In a dwelling house this actual and practical use consists of the use of the dwelling (building) by persons as at their customary place of abode. This actual and practical use of a building other than a dwelling consists of a substantial use of the building for the purpose which was in the contemplation of the parties and for which it was insured. If a mercantile establishment, a mercantile business must be carried on therein; if a factory, it must be operat-

ed as a factory; if a barn, it must be used as barns are ordinarily and customarily used; if a hotel, it must be used and operated as a hotel."

The facts that the tenancy, the hotel business, and its operation had completely ceased, that plaintiff's son had been sent to secure another tenant, or a purchaser, that his, the son's, desire to occupy the premises for hotel purposes and operation were refused by the plaintiff, and that the occupancy by the son was limited to a single room for lodging—not including even preparation of his own meals, and accompanied by locked doors of the building—these facts wholly negative the notion of continued "hotel" occupancy. It cannot be that a complete suspension of use and occupancy of a residence, or a business, or a factory, can be adjudged to be contemplated beyond the policy limitation because of the hope or the expectation that, at some time, there may or might be a renewal of the real and the declared occupancy. It cannot be sensibly held in a case like this that the parties contemplated in a dual sort of way (1) real occupancy and operation by a hotel business and. (2) storage occupancy by the furniture and equipment between tenancies, regardless of the policy limitation.

▉ This answer to the first question is adequate to dispose of the motions. But the second question has been discussed and deserves an expression of opinion respecting its tenability. The industry of counsel has brought to the attention of the court a single case supporting a negative answer to the question; whereas an affirmative answer is quite persuasively supported by rulings in closely analogous situations, viz., those of copartnerships, corporations, and marine insurance. It is agreed that, as between an insurer and an assured, the law as a matter of policy and of morals forbids right of recovery by the latter when the subject of insurance was burned by him or by his procurement. The exemption of the insurer is implicit; and I assume that, by express agreement, it could not be made otherwise. Whether we say that, because of the policy and the morals involved in the situation, an insured implicitly covenants for himself and for his insurer that he will not burn the subject of the contract, or whether we say that by implication he is under that negative duty, that is to say, not to burn, may make little difference. It is true that an insurer may be liable for an incendiary burning. But the difficulty in the present case arises

when we consider the source of the incendiarism. As illustrative of the principle of ascription or imputation, can the insured say to the insurer, "I did not burn the building, my agent and trusted representative did it; my duty, not to burn was not devolved upon him; you insured against his faithlessness toward me; you took that risk, I did not"?

If, therefore, we start with the notion that an insured owes a duty, as above indicated, it is difficult to find a justification for limiting the consequences of violation of such duty by himself personally, and refuse to impute or ascribe to him what ought to be implicit warranty that his delegate, his substitute, and alter ego, will likewise not violate it. It cannot be that, if the insured owes the duty, his agent or substitute has the privilege of not respecting it, and thus give the insured the benefit of the contract. In ascribing to an insured the responsibility of the tortious act of his servant, as a basis of defense by the insurer, the principle which is invoked strikes me as identical with that which is the basis of liability of a railroad company, upon imputation, for deliberate tort of its servant. Craker v. Chicago & Northwestern Ry. Co., 36 Wis. 657, 17 Am. Rep. 504. This, again, is upon the assumption that the insured owes the negative duty indicated; and that observance of such duty may be exacted not only from him personally, but also from those who are deputed to stand for him in respect of the subject of insurance.

▉ In thus answering the second question favorably to the defendants, it is deemed unnecessary to review the contention of the plaintiff that the court erred in admitting in evidence the record of conviction of the plaintiff's son. When such record was first offered, objection thereto was sustained. But thereafter plaintiff's counsel persisted in cross-examining defendants' witness, the assistant fire marshal, who investigated the fire and made the formal accusation upon which plaintiff's son was arrested and convicted. Whether the record was admissible, or whether plaintiff's counsel opened the door for its admission, are questions which have become more or less academic in view of the entire sufficiency of the evidence without this item to sustain a finding that the plaintiff's son was the incendiary. The proof, without such record, casts upon the plaintiff a burden which was not met, and amply sustains the finding that plaintiff's son was the incendiary.

Upon these views, the defendants' motion will be granted and judgment of dismissal entered.