GLENS FALLS INS. CO. OF GLENS FALLS, N. Y., v. SHERRITT.
No. 4281.

Circuit Court of Appeals, Fourth Circuit.
April 5, 1938.

824

Alexander H. Sands, Jr., and Alexander H. Sands, both of Richmond, Va., for appellant.

William G. Maupin and W. Shepherd Drewry, both of Norfolk, Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

Glens Falls Insurance Company, defendant in the District Court, appeals from a judgment in the sum of $4,835.61 and interest recovered by Nancy I. Sherritt, the insured under a policy of fire insurance covering a dwelling house in the city of Norfolk. The loss is admitted, but it is contended that the plaintiff was not the proper party to maintain the action because she had given a mortgage on the property to the Home Owners Loan Corporation for a sum in excess of the amount sued for; and hence her action should have been dismissed. It is also contended that no liability arose under the policy, because (1) the fire was caused by an incendiary act imputable to the insured; (2) the interest of the insured was other than the unconditional and sole ownership required by the policy, and (3) the insured concealed material facts concerning the insurance from the insurer. At the conclusion of the evidence each party moved for a directed verdict, and it was stipulated that the jury be discharged and all questions of law and fact be submitted to the District Judge for determination.

Coming to the merits of the case, we find that the insured acquired the dwelling house under the will of her husband, an attorney of the city of Norfolk. In consideration of a premium which was fully paid, the company issued the policy on April 17, 1935, for the term of 3 years, during which the property was partially destroyed by fire. Stanley Sherritt, a son of the insured, 28 years of age, had always lived at the home of his parents and continued to live in the dwelling house with his mother after his father's death. She had two other sons, a Richmond business man and a university professor in New York. At Thanksgiving, 1935, she went to visit her son in New York for a short time, intending to return to Norfolk before Christmas, but she stayed longer, and on January 28, 1936, just a week before the fire, she suffered a severe accident resulting in a critical physical condition and inability to walk for more than a year. While in this condition she was kept in ignorance of the fire and was induced to give Stanley Sherritt a power of attorney to adjust the claim for insurance, supposing the document to be for another purpose. Later, however, with full knowledge of the facts, she ratified her action.

When the insured left Norfolk on this visit, her son Stanley remained at home in the dwelling house. There is no evidence that he was empowered to act as caretaker of the property or as agent of his mother in any other capacity during her absence. He had been a member of the household for many years, and he continued as such after she went away. A colored servant who had worked in the household for 2 years before the insured left for New York was employed to do washing and ironing in the house 10 days before the fire. On January 27, 1936, the son left the house and went to live at the Monticello Hotel in Norfolk where he remained until February 5, 1936, the day after the fire.

The District Judge found that the fire was of an incendiary origin, in view of certain evidences within the house that some one had deliberately brought it about. The insurer charges that the house was set on fire by the son; that he was at the time the agent of his mother in charge of the property and hence his act is imputable to her and defeats recovery under the policy. To support the existence of the agency the defendant relies upon a statement of the in-

sured that when she went away she left her son in the house just as she would have left her husband there, had he been living; and upon evidence that the son placed the insurance in question for her, as well as other insurance from time to time; that he adjusted a previous fire loss which occurred in February, 1934; that he increased the insurance on the building after the first fire; and that he endeavored to adjust the loss here involved under the power of attorney executed by her after the fire. The District Judge, however, held that the appointment of the son as agent of the owner for certain specific purposes did not require the imputation to her of an unlawful incendiary act, even though his guilt be assumed. We are in accord with this conclusion. The evidence shows that the owner did not intrust her son with general control of the property or of the insurance thereon; and that in each prior instance, when he acted for her, he was given specific authority so to do. A directed verdict for the defendant on the theory that the son was the agent of the owner in charge of the property at the time of the fire would not have been justified by the facts. There is therefore no need to consider the rule announced in Sternberg v. Merchants' Fire Assur. Corp., D.C., 6 F.Supp. 541, with reference to the responsibility of an insured for loss of property occasioned by his agent in charge thereof; or to consider the applicability of the cases in marine insurance which discuss the liability of the insurer for losses attributable to the barratry of the master and crew of a ship. See Waters v. Merchants' Louisville Ins. Co., 11 Pet. 213, 9 L.Ed. 691.

The contract of insurance provided that the entire policy should be void, unless otherwise provided by agreement in writing, if the interest of the insured was other than unconditional and sole ownership. The insurer claims that the plaintiff was not vested with such ownership by reason of the following facts: When the policy was issued, and while it was in force, the plaintiff held a general warranty deed dated October 27, 1934, whereby Noble E. Irwin of Annapolis, Md., purported to convey to her full title to the dwelling house, subject to existing encumbrances. The deed had been duly executed, acknowledged, and delivered, but had not been recorded. The record title was in the name of Irwin to whom the plaintiff had previously conveyed the property by similar deed on September 24, 1934. Irwin is a brother of the insured and an Admiral

in the United States Navy. The evidence furnishes support for two conflicting explanations of these transfers. According to the testimony of an adjuster, acting for the company after the loss, Stanley Sherritt, who then had a power of attorney to represent his mother in the adjustment, stated that the deeds were exchanged so as to avoid the necessity of making wills. If the sister died first, the unrecorded deed was to be destroyed; but if the brother died first, it was to be recorded. If such were the facts, the clause of the policy was violated. In order to constitute unconditional and sole ownership, the interest of the insured must not be held in common or jointly with others; but must be of such a nature that the assured will sustain the entire loss if the property is destroyed. Virginia Fire & Marine Ins. Co. v. Lennon, 140 Va. 766, 125 S.E. 801, 38 A.L.R. 186; Palmetto Fire Ins. Co. v. Fansler, 143 Va. 884, 129 S.E. 727.

The District Judge, however, accepted as true the other explanation. Stanley Sherritt, who had been paralyzed and confined to a hospital for some months before the trial, did not testify. Mrs. Sherritt and Admiral Irwin both testified that the purpose of the exchange of deeds was to avoid the seizure of the property by creditors who held a note bearing the accommodation indorsement of her late husband. The primary obligors were conveying away their property with the apparent intent to avoid the payment of the debt; and Mrs. Sherritt hoped that, by concealing her ownership of the dwelling house, the creditors would be led to pursue the parties primarily liable. The creditors did in fact follow this course. As this evidence furnished a substantial basis for the court's finding of fact, it is only necessary to inquire on this branch of the case whether the plaintiff, as the grantee and holder of the unrecorded deed, was the unconditional and sole owner of the property within the meaning of the policy. In Virginia an executed deed is valid between the parties, and the grantee gets good title without recordation, which is requisite only to protect the property from the claims of creditors or purchasers who have dealt with the grantor. Virginia Code of 1936, § 5194 annotation; Thomas v. Stuart's Ex'r, 91 Va. 694, 22 S.E. 511; Wade's Heirs v. Greenwood, 2 Rob. 474, 41 Va. 474, 40 Am. Dec. 759; Turner v. Stip, 1 Wash., Va., 319; Raines v. Walker, 77 Va. 92. The insurer relies particularly on the decision in Powers v. Fireman's Fund Ins. Co., 249 App.Div.

734, 292 N.Y.S. 1002, affirmed by the Court of Appeals of New York, 274 N.Y. 607, 10 N.E.2d 573, in which, under facts similar to those is the case at bar on the point under discussion, the court ignored an unrecorded deed purporting to convey title to the insured. The case is not persuasive here, for whatever may be the law of New York, it is established in Virginia that the grantee of an unrecorded deed secures full title which is open to attack only by the grantor's creditors or purchasers.

■ The insurer, nevertheless, contends that the plaintiff is bound by the statement made by her son during the course of the adjustment, because he was duly empowered to conduct business on her behalf, and hence if it be found that the statement was false, the plaintiff would be chargeable with a fraud that avoids the policy. It is provided therein that the entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning the insurance or the subject thereof; or in case of any fraud or false swearing, touching any matter relating to the insurance or the subject thereof, whether before or after loss. We entertain no doubt that the insurer would have been relieved of liability under the policy if the insured had been guilty of fraud in connection with the insurance or the insured property, whether the fraudulent act or statement was made by her in person or through her authorized agent. But the evidence in the case did not justify a directed verdict on the theory that fraud was necessarily involved in the son's statement to the adjuster. It is established that the statement was false, but, so far as we know, it was made in mistake rather than in fraud. Moreover, it had no tendency to deceive the company to its hurt for, if the statement was true, the company was relieved from all liability. It assumed no liability and parted with nothing of value by reason of the statement, but, on the contrary, was furnished with grounds of defense sufficient, if supported by facts, to defeat the claim against it.

■ Further with respect to the insured's title to the property, the appellant contends that the deed from Admiral Irwin to the insured should not be considered because it did not bear an internal revenue stamp. During the course of the trial, counsel stipulated that if Admiral Irwin were present, he would testify as to the conveyance of the insured property by deed from the plaintiff

to him, and the subsequent transfer of the property by him to the plaintiff; and copies of the deeds were admitted in evidence and stipulated to be true copies of the originals. Later the defendant offered in evidence the original deed from the Admiral to his sister. Upon the completion of all the evidence, however, the defendant moved that the original deed be stricken from the record because it failed to show that an internal revenue stamp had been affixed thereto as required by the act of June 13, 1898, Schedule A, 30 Stat. 460, and sections 1105 and 1107, Schedule A 7 of Revenue Act of 1919, 40 Stat. 1134, 1137. The statute provides, 30 Stat. 455, §§ 14 and 15, that no document required by law to be stamped, which has been issued without being duly stamped, shall be recorded or admitted or used as evidence in any court until a legal stamp denoting the amount of the tax shall be affixed thereto. This motion was refused by the court and the defendant complains that this action was erroneous. We are of the opinion that there was no prejudicial error in the ruling, even if it be assumed that the deed ordinarily would not have been admissible in evidence under the statute. It clearly appears that it was offered in evidence by the defendant itself; and not only is this true, but the defendant would have been no better off if the original deed had been stricken from the evidence, because the copy of the deed, which had been originally admitted in accordance with the agreement of the defendant, still remained in the record. Furthermore, the statute did not require that the stamp be affixed to the deed until it was offered for record; and the plaintiff had only to affix a legal stamp before the deed was offered in evidence in order to make it strictly admissible under the provisions of the act, and doubtless would have done so had the defendant not agreed to the admission of a copy of the deed and withheld its objection until the very end of the case after all of the evidence was in.

■ The defendant also contends that the failure of the insured at the time the policy was issued to inform the company of the transfers between her and her brother, as above described, constituted a misrepresentation or concealment of a material fact or circumstance concerning the insurance or the subject thereof which invalidated the policy. It is clear that there was no misrepresentation by the plaintiff. No inquiry was made as to the method by which she

had acquired title to the property and no information on this subject was offered. When the policy was issued, the plaintiff was the unconditional and sole owner of the property under the deed from her brother, but she had kept the deed off the record in order to safeguard it from the creditors. It may be assumed that these transactions amounted to transfers of the property made with intent to hinder, delay, or defraud the creditors, but they had no tendency to defraud the defendant. A vice president of the company, testifying on its behalf, was questioned as to the materiality from the company's standpoint of the transfers and of the failure to record the last deed. He said that the circumstances would have been a material factor in deciding whether to grant or refuse the insurance, and that, if the company had known the facts, it would not have issued the policy. It is clear from his testimony, however, that he held the mistaken belief that under the law the owner of the property was the grantee in the last deed of record, and that this grantee could have obtained insurance on the property. He also said at one point of his testimony that he did not see that the true facts affected the company's risk. Other evidence showed that the insured owned not only the property in question, but a number of other lots in the vicinity of Norfolk. Under this state of the evidence, the District Judge was not convinced of the materiality of the facts described and reached the conclusion that the financial standing of the plaintiff and her family was such that the risk would not have been declined had all of the facts been known. Under the circumstances, the question of materiality became one for the decision of the trier of facts, and we find no error in the court's conclusion in this respect.

We find no error in the conclusion of the court that the plaintiff was entitled to maintain the suit. The defendant had pleaded the pendency of another suit in the state court instituted by the mortgagee several months after the present action, claiming the right to the insurance under the standard mortgage clause of the policy; and the plaintiff, with leave of court, had amended her claim so as to sue "for the benefit of herself and all others interested in the policy of insurance." The court was urged to dismiss the pending suit on the ground that the mortgagee was the real party in interest and was therefore the only one entitled to sue. There are jurisdictions in which a suit by the mortgagee is the proper or only form of action upon an insurance policy, especially where the statute requires all actions to be brought in the name of the real party in interest. 14 R.C.L. 1427; 4 Ann.Cas. 544; Westchester Fire Ins. Co. v. Coverdale, 48 Kan. 446, 29 P. 682; Palmer Savings Bank v. Ins. Co., 166 Mass. 189, 44 N.E. 211, 32 L.R.A. 615, 55 Am.St.Rep. 387; Jefferis v. London Assur. Co., D.C., 16 F.Supp. 590.

Such, however, is not the practice in Virginia. Section 5768 of the Virginia Code of 1936 permits the assignee or beneficial owner of any writing or chose in action to maintain any action in his own name which the original obligee might have brought; and section 5143 provides that, if a promise be made for the benefit of any person with whom it is not made or with whom it is made jointly with others, such person may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the promisor. These statutes do not forbid a suit in the name of the original obligee. This court has held that under section 5768 suits may be brought upon an assigned cause of action either in the name of the original obligee or in his name for the use of the assignee, or in the name of the assignee alone. Carozza v. Boxley, 4 Cir., 203 F. 673, 677; see, also, Aetna Ins. Co. v. Aston, 123 Va. 327, 96 S.E. 772; Tilley v. Connecticut Fire Ins. Co., 86 Va. 811, 11 S.E. 120; Staats v. Georgia Home Ins. Co., 57 W.Va. 571, 50 S.E. 815, 4 Ann.Cas. 541.

The defendant points out that in the last-cited cases the courts were dealing with a loss payable clause rather than a standard mortgage clause which creates an insurance in favor of the mortgagee that is not invalidated by any act or neglect of the mortgagor; but while there is an important distinction between these clauses, it has no bearing upon the point under discussion because the mortgagee is the person entitled to the proceeds of the insurance under either clause and may fairly be called the real party in interest. Thus it has been held under modern practice acts requiring all actions to be brought in the name of the real party in interest that the mortgagee is the proper person to bring suit where the mortgage equals or exceeds the loss, not only under policies containing a standard mortgage clause, but also under policies containing a loss payable clause. See cases cited

828

14 R.C.L. 1427, note 14; Smith v. Union Ins. Co., 25 R.I. 260, 55 A. 715, 105 Am.St. Rep. 882. Cf. Equitable Fire Ins. Co. v. Jefferson Standard Life Ins. Co., 26 Ga.App. 241, 105 S.E. 818; Brookings v. American Ins. Co., 134 Kan. 616, 7 P.2d 111.

The insurer can readily be protected in the pending case against a second claim proceeding from the mortgagee. In Aetna Ins. Co. v. Aston, 123 Va. 327, 337, 96 S.E. 772, suit was not brought in the name of the real party in interest, but was in fact brought for his benefit, and it was decided that the judgment might be so marked and rendered even after verdict. See, also, Martin v. Franklin Fire Ins. Co., 38 N.J.L. 140, 20 Am.Rep. 372; Staats v. Georgia Home Ins. Co., 57 W.Va. 571, 50 S.E. 815, 4 Ann. Cas. 541. It is our conclusion that the judgment in the pending case should be affirmed, but that it should be entered to the use of the mortgagee to the extent of the mortgage debt.

Modified and affirmed.